[Civ. No. 3775.   Third Appellate District.—May 29, 1929.]

GEORGE H. LETTEAU, Appellant, v. VERN DUMAS et al., Respondents.

Parker, Moote & Longcroft for Appellant.

James S. Roche, Frank Rouse and Jerome H. Kann for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment in a suit to quiet title.

The plaintiff is the owner of the eight lots described in the complaint, which are a part of Tract 7603 of the city of Los Angeles. November 5, 1923, the defendants prepared and sent to the plaintiff a written communication in the form of a tentative agreement or offer to buy these eight lots upon specified terms for the sum of $28,500. This agreement was accompanied by $7,050 as part payment. The document described them with reference to an unrecorded map. So far as the record shows, the plaintiff had nothing to do with the preparation of this instrument, which appears to have been voluntarily prepared and signed by the defendants alone, and was addressed to the plaintiff, who received and retained the money. This written offer to purchase the lots was, however, indorsed by one H. R. Cowan, as follows:

"The undersigned hereby accepts the deposit above mentioned, subject to all the conditions contained in the foregoing application.

"H. R. Cowan,
"By R. A. Scott."

This was not a contract binding the plaintiff to sell these lots. It was a mere conditional offer on the part of the defendants to buy the lots. Subsequently, on December 27, 1923, the map of said tract was duly recorded. Thereafter, on January 14, 1924, eight independent contracts for the sale of the lots were executed by the respective parties. The purchase prices of these lots ranged from $3,500 to $3,750 each, aggregating the sum of $28,500, which was the same amount specified in the former agreement. The payments credited on the purchase prices of the lots in the last-mentioned contracts ranged from $700 to $1200 each, and aggregated some $7,600, a sum slightly in excess of the amount remaining in the hands of plaintiff. Each contract specified the times and amounts of subsequent payments. The first installments due and payable under these agreements were sums of $700 to $850 on each contract, some of which were due May 5, 1924, and others were due October 5, 1924. None of these subsequent installments was paid. The only money which was paid by the defendants on any of these contracts after their execution was a total sum amounting to less than $500

which was paid for taxes and interest. The defendants were in default. It was stipulated that no further payments were made upon these contracts. Except for the fact that the aggregate final selling price of these eight lots was the same figure mentioned in the original agreement, and that the total sum credited on account of the purchase price was approximately the amount of defendants' money which was in the hands of plaintiff, the two transactions were separate and distinct. The record does not show that the plaintiff ever acquiesced in the first proposal. None of these latter contracts made reference to the former document. Each of them described the lot to which it applied by reference to the recorded map of the tract. Each contract specified the terms of sale in detail, setting out the sale price, the amount credited on account and the amounts and dates of the deferred payments together with the rate of interest thereon. Each contract provided for a termination of the agreement and a forfeiture of all money paid thereunder in the event of a breach of any covenant or failure to meet payments as stipulated. Time was made the essence of these contracts. That provision read:

"It is expressly understood and agreed that time is of the essence of this agreement, and in the event of the failure of the buyer to comply with any or all of the terms or conditions hereof in the manner and within the time herein specified, the same shall become null and void as fully as if it had never been made, and the seller shall be released from all obligations in law or equity to convey said premises, and the buyer shall forfeit all right thereto and to all moneys theretofore paid under this agreement."

It was stipulated that on December 10, 1924, the defendants consulted an attorney, who advised them that the original offer to purchase lots dated November 5, 1923, and also the contracts for the purchase of the lots dated January 14, 1924, were executed in violation of law and void, and that the defendants, therefore, refused to and made no further payments thereon.

This suit to quiet title was filed September 1, 1926. Answering the complaint, the defendants admitted that plaintiff held the legal title to the lots, but set up the facts of the transaction, alleging that the first agreement to buy

the lots was made describing the lots with reference to an unrecorded map, which was, therefore, void, and that the subsequent contracts were coupled with and an inseparable part of the first document and are, therefore, tainted by the same infirmity and were also void.

This was the view taken by the trial court, which adopted findings accordingly, but refusing to quiet title in the plaintiff upon any terms, in spite of the fact that it was specifically found that the plaintiff was the owner of the property. The court further rendered judgment in favor of the defendants creating a lien upon the property for the repayment of the money advanced by the defendants upon the purchase price of the lots, together with interest and taxes amounting to $7,505.71. The plaintiff appealed.

■ It is settled law that a contract to sell lots described only by reference to an unrecorded map, contrary to the provisions of the Statutes of California of 1907, page 290 (Act 4574 of Deering's Gen. Laws, 1923, sec. 8), is void. (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14] ; *Smith* v. *Bach,* 54 Cal. App. 236 [201 Pac. 611] ; *White* v. *Jacobs,* 204 Cal. 334 [267 Pac. 1087] ; *Hartzell* v. *Doolittle,* 205 Cal. 17 [269 Pac. 527] ; *Krause* v. *Marine Trust & S. Bank,* 93 Cal. App. 681 [270 Pac. 246].) While the contract to sell land described only by reference to an unrecorded map is void and may, therefore, not be specifically enforced, the last cited authorities hold that one who has paid money under such a void contract may maintain an action to recover it.

■ In the present case, however, while it must be conceded that the first document was void and unenforceable and that the defendants might have then maintained an action to recover this money, it was the defendants themselves who drew and executed this first document and now seek to take advantage of their own violation of the law. As the situation then existed, because the first instrument was void, the result was that the plaintiff held in his possession $7,050 belonging to the defendants, which was subject to recovery in a proper proceeding. A map of the tract was subsequently duly filed pursuant to law, and the parties then formally entered into eight separate valid contracts for the sale of the lots, each of which was unambiguous and full and complete in itself. No reference was made in any of

these contracts to a former agreement. The first was void and could not be relied upon to procure the making or enforcement of the latter. There is no legal or essential connection between the first agreement and the second group of contracts. If the plaintiff saw fit to credit the money belonging to the defendants which was in his possession, upon valid contracts to purchase lots subsequently executed by them, the defendants may not complain. The defendants will not be permitted to voluntarily tender to the plaintiff a unilateral instrument offering to purchase lots, which violates the statute by reference to an unrecorded map and then use their own weapon to defeat subsequent valid contracts to buy the property which were executed in good faith and which contracts they have breached. This would be converting a wholesome statutory rule of law into an engine of fraud.

Moreover, if it could be said that the first illegal document is inseparably coupled with the latter contracts so as to taint them with its infirmity, they would all become void and would then furnish no means of attaching a lien upon the land of plaintiff in a suit to quiet title. This is true even though the defendants would be afforded a remedy under such circumstances for the recovery of money belonging to them, which was wrongfully withheld by the plaintiff.

It follows that the findings are not supported by the evidence so far as the judgment and lien for defendants are concerned.

The judgment is reversed and the trial court is directed to enter judgment for the plaintiff as prayed for in the complaint.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 28, 1929, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1929.

Langdon, J., dissented.