[Civ. No. 8374. First Appellate District, Division One.—October 11, 1932.]

THOMAS S. FEENEY, as Administrator, etc., Respondent, v. W. O. CLAPP et al., Appellants.

James Snell for Appellants.

Wyckoff, Gardner & Parker for Respondent.

THE COURT.—The above action was brought by Margaret Feeney, since deceased, to recover installments of rent under a lease alleged to have been entered into by defendants on October 12, 1924. The answers admitted the execution of the lease by defendant Clapp but denied its execution by or on behalf of defendants Woodruff, who were copartners doing business under the name of F. H. Woodruff & Sons.

Mrs. Feeney was the owner of a ranch in San Benito County known as the Feeney place, which contained about 116 acres. Defendants Woodruff were engaged in the business of growing and marketing seeds, and had their principal place of business in Milford, Connecticut. They contracted with land owners in California for the growing of seeds, and occasionally leased lands themselves for that purpose. Defendant Clapp from the year 1920 to the date of trial was the representative of the firm in California, where the Woodruffs occasionally visited in connection with the business. On December 29, 1923, Mrs. Feeney leased the land, defendant Clapp being named in the lease as lessee, for the term of one year from November 1, 1923, the lessee having the option to extend the term for an additional three years. While the testimony is conflicting it sufficiently

appears that the rent under this lease was paid by defendants Woodruff, who furnished seed for planting the land; that all the crops grown thereon were delivered to the latter and no accounting therefor was made to Clapp; further, that one of the partners made statements to the effect that the firm was the real party in interest under this lease. Clapp admitted that in August, 1924, the Woodruffs advanced to him the sum of $10,000, for which he gave no evidence of indebtedness, and that the amount was never repaid. It was also shown that in 1923 there was deposited in Clapp's bank account the sum of $40,000, and in 1924 the sum of $29,500, the proceeds of checks drawn upon Connecticut banks with which the Woodruffs did business.

The lease made no provision for the furnishing of water for irrigation, and in the spring of 1924 the crops on the land were suffering from lack of moisture. It was shown that the firm was so advised by Clapp, and W. H. Woodruff, one of its members, thereupon came to California. According to the testimony the latter consulted with Mrs. Feeney and her sons with regard to the sinking of a well upon the property. In these conversations Woodruff mentioned the fact that the lease contained an option for an additional term of three years, stating that they would not exercise the same unless assured of sufficient water for irrigation purposes. After considerable negotiation Mrs. Feeney agreed to pay a sum not to exceed $1,000 toward the cost of sinking a well if the Woodruffs would exercise their option, whereupon W. H. Woodruff agreed that this should be done. Mrs. Feeney's agent then proposed that a written agreement to that effect be prepared in which the firm members should appear as parties. Woodruff stated that if the agent insisted the partners would take the lease in their own names, but suggested that inasmuch as Clapp appeared as lessee in the original lease the agreement be made in his name. After further discussion Woodruff stated: "Well, if I am here we will execute the lease in our name; if not I will see that written authorization will be left with Clapp." A few days later Woodruff and the agent mentioned met again on the land. Woodruff stated that he expected to leave shortly for the east, and in reply to the suggestion that he would be unable in that case to execute the new lease as

had been agreed said "No, but I have left written authorization with Mr. Clapp." It appears, and the court found, that no such authorization was executed. It was further found—and the evidence supports the finding—that Mrs. Feeney expended the sum mentioned and executed the new lease in reliance upon the representation and in the belief that Clapp was acting for the firm. The work proceeded on the well, but Woodruff left California before the new agreement was drawn. In October, 1924, Mrs. Feeney's agent prepared a new lease for the term of three years from November 1, 1924, and this also contained Clapp's name as lessee. The new lease was executed by the latter and Mrs. Feeney, who in the meantime had advanced about $900 toward the cost of the well in the form of credits on the rent which had become due. The rent was made payable in installments in November and September of each year after the date of the lease, and the installments were paid until November, 1926, when default was made. There was evidence that the rent paid thereunder was by checks drawn upon the bank account of the firm, or from funds furnished by it and deposited to Clapp's account; also that the crops were shipped to the firm, which made no accounting therefor to Clapp, nor did the latter receive anything in the way of a price therefor. The court found that the rent was payable by defendant Clapp and defendants Woodruff, doing business as aforesaid, and entered judgment against the three for the amount.

Defendants have appealed therefrom and contend that the court's findings that Clapp was the agent for the firm; that Woodruff agreed that the lease should be executed in Clapp's name or negotiated to that end, and that the firm is estopped to deny its liability under the lease, are unsupported; also that the court erred in admitting certain evidence over objection. Defendants further claim that the court erroneously found Clapp to have been a member of the firm; but this can be disposed of at the outset by stating that the findings bear no such construction.

In addition to the above it was testified that Woodruff stated that the crops growing in the spring of 1924 belonged to the firm, and that the firm had leased the ranch "and had a chance for a three-year lease on the place". The record

discloses some conflict respecting the ownership of the bank deposits mentioned, but it was sufficiently shown that a portion thereof was firm property, and in addition Clapp's testimony in this regard was impeached by evidence which indicated that his memory was faulty. Other circumstances appear tending to show that contrary to defendant's contention Clapp was not operating on his own responsibility but that the firm members were the real parties in interest.

Without further discussing the voluminous testimony in the case it appears to us that the findings complained of are sufficiently supported. It is true the testimony is sharply conflicting and inferences in support of defendants' contentions might fairly be drawn therefrom, but these questions were for the trial court, and under such circumstances its conclusions either way are conclusive on appeal. (*Aronson & Co.* v. *Pearson,* 199 Cal. 295 [249 Pac. 191]; *Wing* v. *Kishi,* 92 Cal. App. 495 [268 Pac. 483].)

It is clear from the evidence that Mrs. Feeney did not extend credit exclusively to Clapp notwithstanding that the lease was made in his name, and that she justifiably acted upon the belief that she was also dealing with his principals. Where such is the case the rule is well settled that the principal is liable (*Geary St. etc. R. R. Co.* v. *Rolph,* 189 Cal. 59 [207 Pac. 539]; *Rubin* v. *Platt Music Co.,* 92 Cal. App. 203 [268 Pac. 396]; *Milonas* v. *Sarantitis,* 109 Cal. App. 343 [292 Pac. 978]. See, also, *Pacific etc. Homes, Inc.,* v. *Seeber,* 205 Cal. 690 [272 Pac. 579], where *Ferguson* v. *McBean,* 91 Cal. 63 [27 Pac. 518, 14 L. R. A. 65], cited by defendants is criticised); and where, as here, the agent intentionally made himself a party to the contract, recovery can be had against him as well (*Marshall* v. *Bernheim,* 64 Cal. App. 283 [221 Pac. 401]).

The firm members claim that the contract alleged was within the statute of frauds, and consequently that they were not bound, but it is plaintiff's position that they were estopped to assert the statute. On this question the finding was that defendants Woodruff immediately after the execution of the lease entered into possession, paid the rent and received the crops and other benefits thereunder; and this finding is also supported. Although a contract may be within the statute of frauds, yet if the conduct of the party

relying thereon has been such as to raise an equity outside of and independent of the contract he may be estopped to make that defense (12 Cal. Jur., Statute of Frauds, sec. 102, p. 934, and cases cited; *Borel* v. *Rollins,* 30 Cal. 408), and under facts similar to those of the present case the principal was held to be estopped to aver the invalidity of the lease (*Heffernan* v. *Davis,* 24 Cal. App. 295 [140 Pac. 716]; *Chain* v. *Ehrman,* 92 Cal. App. 334 [268 Pac. 438]; *Laack* v. *Dimmick,* 95 Cal. App. 456 [273 Pac. 50]).

■ Defendants complain of rulings upon objections to questions asked of defendant Clapp on cross-examination, and to testimony of admissions and conduct by them at different times during the period over which these transactions extended. We have examined the record and are satisfied that no prejudicial error was committed.

There is likewise no merit in the claim that the record contains no evidence of ostensible authority in defendant Clapp. On the contrary, the conclusions of the trial court in this respect are amply supported.

After an examination of the evidence we are satisfied that the findings are fully sustained and that no error has been shown which would justify a reversal of the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 8, 1932.