[Civ. No. 5110. Third Appellate District.—December 11, 1934.]

J. H. COOK, Respondent, v. LA VINA LAND COMPANY (a Corporation), Appellant.

James E. Pawson for Appellant.

John C. Packard for Respondent.

DEIRUP, J., *pro tem.*—This action was brought by respondent to recover from the appellant the sum of $5,250,

payments on account of seven contracts for the sale and purchase of land. A portion of that sum, $3,500, was a credit given for respondent's equity in a house and lot; the rest had been paid in cash. The action is based upon *quantum meruit.* It was alleged in the complaint and found by the court that a map which was exhibited to plaintiff, from which the description of the property sold was taken, had not been filed for record and that therefore the original contracts were void; and that although a map was filed subsequently and new contracts in which the property was described according to the recorded map were executed thereafter, they, too, were void as being merely continuations of the former ones. It was further alleged and found that the property which was described in the final contracts was not the same property as that described in the original contracts by reference to the same tract numbers as shown on the original plat. The court gave judgment to the respondent for the sum prayed for.

Appellant had subdivided a large tract of land. Its plan was to plant vineyards on the land as sold and care for them for a period of time. For that purpose it reserved in its contracts of sale such easements as were desirable and also retained the right of possession for three years, and it agreed to transfer with the land a proportionate number of shares of stock in a mutual water company, so that the purchasers would be entitled to definite amounts of water for the irrigation of their vineyards.

Pursuant to the plan to sell the tracts the La Vina Investment Company, a corporation subsidiary of the appellant, entered into a contract with Emmett Kadletz, whereby it granted to Kadletz for a period of one year "an option, but not an exclusive option, to buy such portion of the parcels of land hereinabove described and referred to, as may be unsold at the time this option is exercised, of (at) the price marked upon each parcel on the sales map of said parcels on file in the office of the Seller, less $500.00, it being understood and agreed between the parties hereto, however, that in the event the Buyer resells any of the said parcels within the period of one year from the exercising of this option, then in that event said parcels shall be sold only according to the prices shown on the parcels as marked on said map". The contract provided for install-

ment payments and contained the further agreement that the buyer "will and does at all times assume the responsibility and liability arising from any agreement or representation he or his agents may make on any transaction, wherein he resells any of the parcels upon which he exercises this option".

The property was exhibited to respondent by Kadletz and Rae, who was an officer of appellant corporation. He attended conferences at appellant's office and was handed a plat of the property. No plat had been filed for record, but respondent believed that the one which was given him was a copy of a recorded plat. Two prior contracts were canceled or transferred by appellant in order to make available for respondent seven tracts in one parcel. As directed by appellant, respondent conveyed to Kadletz a house and lot, his equity being agreed to be $3,500. It was shown at the trial that appellant was indebted to Kadletz in more than that amount. Respondent paid to appellant the sum of $70 (being $10 on account of the purchase of each parcel) and, as directed by appellant, executed with Kadletz seven "preliminary" contracts of purchase, each of which recited that a deposit of $510 had been made and provided for monthly payments of $10 until $675 should be paid. The respondent agreed that he would then, at the option of the appellant, execute a formal sales contract with appellant, containing terms set out on the reverse of the preliminary agreement. Those terms provided for the planting of a vineyard by appellant, for the care of the vineyard by appellant for three years as a matter of right, and thereafter, at the option of the buyer, for the cultivation of the vineyard by appellant on a share basis; also for a supply of water for irrigation, and for necessary rights of way. It was agreed in the preliminary sales agreement that it was "not binding on the La Vina Land Co."; that the seller "or his representative is solely responsible for any representation made to the buyer other than those set forth in the formal agreement of sale"; and that the "Owner reserves the right to describe the property designated in the formal sales contract and deed by either metes and bounds or lot number and block number".

Respondent made installment payments, not to Kadletz, but to the appellant. After he had paid $675 on each of the seven contracts he executed new agreements with the

appellant, all as contemplated by the original contracts, and made some further payments. Before the final contracts were executed, but without the knowledge of the respondent, the appellant had filed a plat for record, from which the descriptions were taken; but a comparison of that plat with the one given to the respondent at the time of the original transaction showed a difference in the size and location of the lots covered by the agreements. This fact was not, however, known to respondent.

■ Appellant contends that the sale of the land was made by Kadletz; that he was not an agent of appellant; and that, therefore, if there was any illegality in the sale, it is Kadletz, and not the appellant, who is liable therefor. In support of that contention appellant cites the case of *Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80 [28 Pac. 796, 797, 27 Am. St. Rep. 167]. In that case the Supreme Court had under consideration a contract by which the defendants were authorized ''within five days from date hereof, and until this authority is canceled in writing by us, to sell for the sum of $10,000'' certain property, and the owner agreed to pay ''a commission of all over said sum of $10,000, net, for which they may sell said property with our consent. . . . '' It was held that the relationship created was not one of mere agency but was that of vendor and purchaser, the court saying:

''The relation of the defendant to the plaintiffs was not that of a mere agent. While its authority to sell the land was derived from the plaintiffs, yet the sale was to be made for its own account and benefit, as well as for that of the plaintiffs. Although the authority to sell was not so coupled with an interest as to create in the defendant an interest in the land, or to prevent the plaintiffs from revoking the authority, yet by the terms of the authorization the defendant acquired such a right to a portion of the proceeds of sale as to enable it to make a contract of sale upon terms of its own choosing . . . The relation thus created between them was rather that of a vendor and purchaser under a contract of sale than one of principal and agent. . . . ''

In *Smith* v. *Blodget*, 187 Cal. 235 [201 Pac. 584], the Supreme Court construed the following instrument: ''This agreement witnesseth that we herewith give to Frank H. Smith, Jr., an option on our land . . . to handle & sell

for us at a net price to us of $100 per acre. This option good for 60 days from date except that it may be revocable by a 10 days notice to him or to his last P. O. address." Holding that the instrument created an option the court said that:

"The case here presented is one where the intention of the parties is imperfectly expressed and the language employed by them is ambiguous and required interpretation. It· was, therefore, permissible for the court to take into consideration the construction placed upon the instrument by the various persons concerned. . . . Taking into consideration the dealings previously set forth, the various assignments of the option and the manner in which the sale was conducted by all the persons involved, the evidence must be held sufficient to support the finding of the trial court 'that the said instrument was acted upon and construed by the grantors thereof and all the parties to this action as an option and not as a mere agency authorization'."

In *Tufts* v. *Mann*, 116 Cal. App. 170 [2 Pac. (2d) 500], the trial court had found that the plaintiff had obtained from the owner of certain property an exclusive thirty-day option to purchase it for $50,000 net to the owner. The court said:

"An option is· an agreement by which an owner invests another with the exclusive right to buy certain property at a stipulated price, within a limited time . . . It is apparent that respondent held an option and right to purchase the property in question, and that such option was not merely a listing with authorization to sell the property as agent for the owner."

The foregoing decisions were reviewed in the opinion written in the case of *Ruess* v. *Baron*, 217 Cal. 83 [17 Pac. (2d) 119]. There the court had under consideration an instrument by which the owner of land granted to the plaintiff "the sole and exclusive right or option to buy or sell, on or before the 1st day of October, 1928", the said land for $100,000. The court said:

"We think the line of cases last mentioned are controlling here and that the writing here in question was much more than a mere agency agreement and we are not privileged to interfere with the court's decree to this effect. The price of defendant's property, whether purchased by plain-

tiff or by another, was to be a net price to defendant. Plaintiff's profit or compensation, if any, was to be what he could sell the property for over and above that amount; whether he sold it for much or little above that amount would avail the owner nothing.''

It is clear from the foregoing authorities that the test of the relationship between the parties is the intent of the parties as disclosed by their agreement and all of the facts and circumstances, including the conduct of the parties. Obviously one cannot by merely casting what is intended to be an agency contract in the form of an option reserve the privileges but avoid the responsibility of a principal.

To create a relationship of vendor and vendee, rather than a naked agency, the one who is given the power to buy or sell must be given an interest either in the land itself or in the proceeds of the sale of the land. He acquires such an interest if he is empowered to sell upon terms of his own choosing and is to receive all of the proceeds above a specified amount. But in the case at bar, the price at which the land was to be sold was not fixed—it was to be such a price as the appellant should designate from time to time. Kadletz was not to receive the entire purchase price above a sum named—he was to get $500 flat for each parcel sold. By the very terms of the agreement his right to sell any parcel was not exclusive, and the agreement was not at all in line with the sales plan of the appellant, for it contained no provision for the planting of vineyards, the reservation of easements and the furnishing of water. Furthermore, the conduct of the parties indicated that Kadletz was regarded as an agent by all of the parties.

''In order to charge the real principal, it is always competent, in whatever form a contract is executed by an agent, to ascertain by evidence *dehors* the instrument who is the principal, whether the contract purports to be that of an agent, or is made in the name of the agent as principal; and it is immaterial that the principal signed the instrument as a witness in order to disguise his real character as principal.'' (*Curran v. Holland*, 141 Cal. 437 [75 Pac. 46].)

It is true that in the case at bar the principal was not undisclosed. The appellant took an active part in the

sale of the property, and, according to the testimony of the respondent, was regarded by him as the principal. Respondent executed the original contracts with Kadletz; but he did not, by that act, release the appellant from responsibility. In the case of *Feeney* v. *Clapp*, 126 Cal. App. 729 [15 Pac. (2d) 178], where the court had under consideration a lease executed with an agent, the court, in holding the owner liable, said:

"It is clear from the evidence that Mrs. Feeney did not extend credit exclusively to Clapp notwithstanding that the lease was made in his name, and that she justifiably acted upon the belief that she was also dealing with ·his principals. Where such is the case the rule is well settled that the principal is liable. (*Geary St. etc. R. R. Co.* v. *Rolph*, 189 Cal. 59 [207 Pac. 539]; *Rubin* v. *Platt Music Co.*, 92 Cal. App. 203 [286 Pac. 396]; *Milonas* v. *Sarantitis*, 109 Cal. App. 343 [292 Pac. 978]. See, also, *Pacific etc. Homes, Inc.*, v. *Seeber*, 205 Cal. 690 [272 Pac. 579], where *Ferguson* v. *McBean*, 91 Cal. 63 [27 Pac. 518, 14 L. R. A. 65], cited by defendants is criticised.)"

■ After the execution of the preliminary sales agreement respondent continued to make payments to appellant. The preliminary agreements required respondent as soon as certain payments had been made, to execute with appellant new agreements, the terms of which were determined in advance. At the suggestion of the appellant he did execute such new agreements. They did not, however, constitute new contracts, for they did not change the original contractual relationship between the parties. It is true that in the final agreements the tracts as described by reference to the recorded plat did not contain as much land and were not in precisely the same location as the tracts that were indicated on the plat that was given to the respondent at the time the original contracts were executed. But that change was made without the knowledge or consent of respondent and cannot be taken advantage of by appellant.

■ In view of the foregoing we have a situation where a contract of sale is made with reference to an unrecorded plat which the vendee believes has been filed for record. Such contracts have uniformly been held to be void, and the vendee has been allowed to recover the consideration that he has paid. In *Goodspeed* v. *Associated Almond Growers*, 208 Cal. 121 [280 Pac. 530], the rule is stated as follows:

"The description itself, as it appears in the contract, calls for the use of some map or plat for identification of the property, without which said description is plainly unintelligible and perhaps void for uncertainty. In short, an examination of the evidence shows that it is ample to sustain the findings made by the court that the sale was made from an unauthenticated map or plat, and hence brings into operation the rule many times stated by this court, that a contract to sell lots described only by reference to an unrecorded map, contrary to the provisions of the statute hereinabove referred to, is void and unenforceable and the purchaser thereunder may recover the amount paid by him. (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]; *Smith* v. *Bach,* 54 Cal. App. 236 [201 Pac. 611]; *White* v. *Jacobs,* 204 Cal. 334 [267 Pac. 1087]; *Hartzell* v. *Doolittle,* 205 Cal. 17 [269 Pac. 527]; *Krause* v. *Marine Trust & S. Bank,* 93 Cal. App. 861 [270 Pac. 246]; *Letteau* v. *Dumas,* 99 Cal. App. 230 [278 Pac. 459].) Further discussion is not required."

■ Appellant contends, however, that because the act which prohibited sales of land by reference to an unrecorded map and prescribed a penalty for making such sales (Stats. 1907, p. 290) was repealed in 1929 (Stats. 1929, p. 1790), before this action was commenced, respondent's cause of action lapsed. As a general rule the repeal of a statute which gives a cause of action has the effect of destroying all accrued causes of action that are based upon it. (*Willcox* v. *Edwards,* 162 Cal. 455 [123 Pac. 276, Ann. Cas. 1913C, 1392]; *Callet* v. *Alioto,* 210 Cal. 65 [290 Pac. 438]; *Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327]; *Coombes* v. *Franklin,* 213 Cal. 164 [1 Pac. (2d) 992, 4 Pac. (2d) 157], the decision in the latter case being, however, reversed in *Coombes* v. *Getz,* 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866].) But that rule obviously can have no appliaction here, for the later statute is merely a revision of the laws relating to the filing of maps. The statute of 1929 also prohibits the sale of real property by reference to a map that has not been filed for record, and prescribes a penalty for making such sales, and it expressly declares void, at the option of the purchaser, any sale that is made in violation of the statute. ■ Obviously, it was not the intent of the legislature to validate all contracts that, under the preexisting law, were void as being contrary to public policy. Nor can such an intent

be inferred from the proviso that is contained in section 1 of the later act, to the effect "that nothing herein contained shall require the recordation of a map showing property sold or contracted for sales by metes and bounds or by reference to an unrecorded map prior to the adoption of this act as a condition precedent to the sale or contract of sale of the whole or part thereof". Under certain conditions, where the map is not relied upon for the description but is merely referred to, the sale is not invalidated. (*Walbridge* v. *Richards*, 212 Cal. 408 [298 Pac. 971].) It was clearly the intent of the legislature only to avoid interference with sales that had been legally made, though by reference to unrecorded maps.

 Respondent argues that in any event the contracts were void for the reason that they contained, as an essential part of the consideration, agreements to transfer shares of stock in a mutual water company, contrary to the provisions of the Corporate Securities Act. The record shows that upon the hearing of a motion for a new trial, it was brought to the attention of the trial court, without contradiction, that a permit to issue such stock had not been obtained. It may be conceded that that fact would in itself entitle the respondent to recover all payments made by him, but, not being pleaded, it cannot be considered upon this appeal.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.