[Civ. No. 13526.   Second Dist., Div. One.   Apr. 28, 1943.]

WESTERN HARDWOOD LUMBER COMPANY (A Corporation), Respondent, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Appellants.

[Civ. No. 13527.   Second Dist., Div. One.   Apr. 28, 1943.]

E. J. STANTON & SON (a Corporation), Respondent, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Appellants.

[Civ. No. 13528.   Second Dist., Div. One.   Apr. 28, 1943.]

HAMMOND LUMBER COMPANY (a Corporation), Respondent, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Appellants.

[Civ. No. 13529.   Second Dist., Div. One.   Apr. 28, 1943.]

HAMMOND LUMBER COMPANY (a Corporation), Respondent, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Appellants.

[Civ. No. 13530.   Second Dist., Div. One.   Apr. 28, 1943.]

HAYWARD LUMBER & INVESTMENT COMPANY (a Corporation), Respondent, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Appellants.

404

Earl Warren, Attorney General, Burdette J. Daniels, Deputy Attorney General, Maurice P. McCaffrey, Forrest M. Hill, Glenn V. Walls, Doris H. Maier and Elizabeth M. Doyle for Appellants.

Gladstein, Grossman, Margolis & Sawyer as Amici Curiae on behalf of Appellants.

Horton & Horton, Paul G. Henderson, Gerald E. Kerrin and Philip T. Lyons for Respondents.

WHITE, J.—These are appeals from judgments and the peremptory writs of mandate issued thereon. They come before us on the judgment rolls which consist of the petitions for writs of mandate, demurrers thereto, judgments and the peremptory writs.

All of the causes herein considered have for the purpose of appeal, been consolidated for the reason that the identical question of law has arisen in each of them.

For convenience the term "petitioners" will be utilized to designate those employers who seek the writs of mandate in the present proceeding; the term "respondent" will refer to California Employment Commission; and the term "co-respondents" will be used to designate the employees who are affected by the order of respondent commission.

Each petitioner is a corporation engaged in the retail lumber business in the general vicinity of Los Angeles; was an "employer" within the meaning of that term as it is defined by the California Unemployment Insurance Act (Stats. 1935, Chap. 352, as amended; Deering's Gen. Laws, Act 8780d; Deering's 1939 Supplement, page 1697); and at all times since January 1, 1936, has paid contributions, maintained records and filed reports as required by said act. As workmen employed by petitioners, the co-respondents are subject to

the provisions of the aforesaid act, under the terms of which a percentage of their earnings is deducted and paid into the unemployment fund, and this money, together with contributions from petitioners, as employers, is used to pay benefits to unemployed workers. Respondent commission administers the act.

During June of 1939, two unions whose membership embraced a different grade and class of workers than did the unions to which co-respondents were affiliated, and of which unions co-respondents were not members, called a strike against petitioners. Picket lines were established at each of petitioners' places of business by the striking unions. The co-respondents herein did not go on strike against petitioners, but from approximately June 17th to July 27, 1939, were unemployed solely because they refused to pass through the picket lines which the striking unions had established around petitioners' places of business. The co-respondents claimed unemployment benefits under the aforesaid act. Such a claim is initiated by the unemployed workman making application for such benefits. Determination of such claim is made in the first instance by the adjustment unit, provided for in the act, which is referred to as the lower tribunal. If payment is ordered in the first instance, any employer whose reserve account is affected by the payment may intervene and appeal, whereupon payment will be stayed pending such appeal. If payment of benefits is denied by the adjustment unit, the employee affected thereby may appeal. To hear such appeals a referee is appointed by the commission. Such hearing is conducted in the manner usual to such commission hearings, affording full opportunity to produce evidence and examine witnesses. The referee makes written findings and his decision becomes final, subject to an appeal to the commission. In the instant case, the Adjustment Unit of the Department of Unemployment Insurance (the lower tribunal) denied co-respondents benefits and these decisions were appealed to a referee who reversed the determination of the adjustment unit. An appeal was taken by petitioners to the commission, and that body, with one member thereof dissenting, affirmed the decision of the referee, holding that the co-respondents were entitled to benefits. In accordance with such decision, benefits were paid to the co-respondents.

It might here be appropriate to note that at the time the payments of unemployment benefits with which we are here

concerned were made to co-respondents, section 67 of the act as amended in 1937, read in part as follows: ". . . provided, that if a referee affirms a decision of a deputy, or the commission affirms a decision of a referee, allowing benefits, *such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed no employer's account shall be charged* with benefits so paid as to which the decision was reversed."

In September, 1939, said section 67 was amended to eliminate therefrom one of the "double affirmance" provisions, viz., the clause providing for the mandatory payment of benefits where the referee's decision was affirmed by the commission. However, the portion of the section which provided that where a referee affirmed an initial determination awarding benefits the payment thereof was mandatory, was retained.

After payment of the aforesaid benefits commenced, petitioners filed petitions seeking writs of mandate to compel the commission to set aside and vacate its decisions in the cases of co-respondents, to take all such steps as might be proper to make the unemployment trust fund whole, to correct the books and records of the commission and to remove and cancel any charges made against the accounts of petitioners with respect to any payments made to co-respondents regarding their unemployment for the period here in question.

After the filing of demurrers by the commission the cause came on for hearing at which time it was stipulated that the demurrers be overruled, that petitioners have judgments that the peremptory writs issue commanding the commission to set aside and vacate its decisions granting co-respondents unemployment benefits; to remove and cancel charges made against petitioners' accounts with respect to payments made to co-respondents for the period in question; but *reserving however the question as to whether the commission should be required to take such stpes as might be proper to make the unemployment trust fund whole by reason of its depletion through payment of such benefits.*

Thereafter the court rendered judgments and ordered issuance of the peremptory writs requiring the commission to do all of the things stipulated to and further *directing the commission to take such steps as might be proper to make the unemployment trust fund whole.*

It is to the above italicized portion of the judgments that appellant commission directs its attack upon this appeal.

It is conceded herein that under the holding by our Supreme Court in *Bodinson Mfg. Co.* v. *California Employment Commission,* 17 Cal.2d 321 [109 P.2d 935], there was no statutory authority for the awards of benefits made to corespondents by reason of the provisions of section 56 of the act and that such awards should be annulled, but appellants insist that the provision contained in the writs commanding the commission to "take all such steps as might be proper to make the unemployment trust fund whole by reason of the erroneous payment of unemployment benefits to co-respondents" is erroneous and cannot be sustained on the grounds that (1) the payments were made mandatory by section 67 of the unemployment insurance act; (2) there is no duty, power or right inherent in the commission to recoup such benefit payments; and (3) the language of the judgments and the writs issued thereon is so uncertain and ambiguous that compliance therewith by appellants is not possible.

Of their theory of the case, petitioners say it "is based upon the premise that the commission has the power to do everything necessary and proper to carry out the intent and purposes of the act and that where the commission has erroneously paid unemployment benefits to ineligible persons, such acts . . . depleted the unemployment trust fund in which respondents (as employers) have a vested interest and the commission has the power to make said trust fund whole by recovering such erroneous payments from the co-respondents (employees)"; and that the provision in the writs to which appellant takes exception "guards the unemployment trust fund from whim, caprice or erroneous rulings which otherwise might deplete or even exhaust said trust fund."

It is not denied, indeed it cannot be questioned, that the payments made by the commission to co-respondents herein were mandatory in obedience to section 67 of the act. When the referee reversed the determination made by the adjustment unit and ordered payments to be made, the commission had no discretion and was not only authorized but compelled under the law to make the benefit payments. The finality of a referee's decision as far as the payment of benefits is concerned, was settled by the Supreme Court in the case of *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], wherein at page 300 the court said:

"The foregoing cases demonstrate the weakness of the argument that because a commission may make an occasional error in ordering some payment out of a public or semi-public fund, the courts must have the power to stay any and all payments during the lengthy period of judicial review. The Legislature has concluded that it is wiser to have a system of unemployment compensation operating with a possible small percentage of error, than to have a system not operating at all. The legislative power to make such provision is unquestioned; the statutory language cannot be misunderstood; and for the courts that is the end of the matter." In the same case it was held that the judgment of the commission in favor of a claimant is prima facie evidence of his right to recover; that the prime object of the law in establishing the summary procedure set up therein indicates an intention upon the part of the Legislature to furnish immediate relief to those unemployed, as part of a design to alleviate the evils of unemployment as part of a national plan of social security in the creation and operation of which federal and state legislation is coupled and united. If the beneficiary of unemployment insurance payments be required to restore such payments to the state fund in the event of a later adverse decision by the courts, would not the very essence of the act which is its provision for the prompt payment of benefits for the immediate relief of those unemployed, at the time of their unemployment, be destroyed?

Respondents' claim that the moneys erroneously paid under the mandatory provisions of the act can be recovered on the theory that the state is not bound by the acts of its agents acting beyond the scope of their authority cannot be upheld. This we say because, although the payments were erroneously made it cannot be said that the payments were unauthorized. In view of the provisions of section 67 which under circumstances here present make benefit payments mandatory it must be held that such payments were made by "authority of law," by a tribunal possessed of jurisdiction in the matter and clothed with no other alternative than to make the payments in question. When, as was decided in *Abelleira* v. *District Court of Appeal, supra,* the payments of unemployment benefits cannot be stayed or enjoined pending judicial review, because if such were the case one of the prime objects and purposes of the law would practically be

nullified, does it not also follow that the same result would ensue were the commission required to recoup such payments made pursuant to the law's mandate, against the beneficiaries thereof by legal action, or by charging their accounts therewith, thereby foreclosing them from obtaining further benefits through a period of subsequent unemployment until they became entitled to a sum equal to what had previously been erroneously paid to them, unless they restored the amount of such benefits to the fund?

That the legislative intent comports with the foregoing assumption seems manifest to us when we read section 66 of the act, which prior to its repeal in December, 1939, provided in part: " . . . If benefits for total unemployment to which any claimant is not entitled are paid to him, *the amount of such benefits shall be deducted from any benefits to which the claimant may subsequently become entitled.* If the amount of such benefits cannot be so deducted from benefits to which the claimant subsequently became entitled in the benefit year in which such benefits were erroneously paid, no employer's account shall be charged therewith. . . . " (Italics ours.) Furthermore, prior to its repeal on December 1, 1939, section 58(e) read in part as follows: ". . . If partial benefits in excess of the amount to which any claimant is entitled are paid, as a result of the claimant's failure to accurately state in his claim the correct amount of wages so received, or otherwise, *the amount of such excess shall be deducted from any benefits to which the claimant may subsequently become entitled.* If such excess cannot be so deducted from benefits to which the claimant subsequently became entitled in the benefit year in which such excess was paid, no employer's account shall be charged therewith." (Italics ours.)

Applying the usual and ordinary rules of statutory interpretation to the foregoing repeals, it seems clear that it was the legislative intent to take from the commission such commutation or recoupment procedure. The power of offset or recoupment, which was granted to the commission by virtue of the provisions of the foregoing sections prior to their repeal, was withdrawn from the commission by the amendment of these sections. At the time the commission rendered its decisions in these cases, at the time the benefit payments were made and indeed, at the time the petitions for the instant writs of mandate were filed there was no provision in the

California Unemployment Insurance Act providing for recoupment of benefits. ■ It is the law that a reviewing court must dispose of a case under the law in force when its decision is rendered and the unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them (*People* v. *Lindheimer,* 371 Ill. 367 [21 N.E.2d 318, 124 A.L.R. (1942), 1473, 1478]).

■ It is the rule in California that repeal of a law or statute takes away all remedies afforded by such legislation and defeats all actions pending under it at the time of the repeal (*Pacific Gas & Electric Co.* v. *State of California,* 214 Cal. 369, 373 [6 P.2d 78]; *Cook* v. *LaVina Land Co.,* 3 Cal.App.2d 21, 30 [39 P.2d 458]; *People* v. *Bank of San Luis Obispo,* 159 Cal. 65, 71 [112 P. 866, Ann.Cas. 1912B, 1148, 37 L.R.A. N.S. 934]). Therefore, the commission being without jurisdiction under the law to proceed to recoup the erroneous payments by reason of the repeal of the legislation which clothed it with that power, it must be held that the commission is without statutory power, duty or authority to proceed as directed by the writs of mandate herein "to take such steps as are proper to make the fund whole."

■ Petitioners contend that unless the commission be required to recover the amounts paid as a result of its erroneous determination, the efficacy of a court review of the commission's action would be destroyed and rendered a nullity, as well as depriving petitioners of property without due process of law. It is argued by petitioners that as contributors to the unemployment trust fund and as taxpayers they have a vested interest in the fund and the right to insist that the commission, as custodian of said fund, take appropriate action to prevent depletion or exhaustion of the same through withdrawals therefrom in favor of those ineligible to receive such funds as benefits under the act. The soundness of this proposition admits of no question but the claimed injury to petitioners was thus answered by the Supreme Court in *Abelleira* v. *District Court of Appeal, supra,* at page 297 wherein it is said: "What injury do the employers show? They say that they will suffer in the event unauthorized payments are made to unemployed workers, because their accounts will be charged with such payments, and their reserve under section 39 of the act will be thereby decreased,

with the ultimate result that they may in 1941 pay contributions at an increased rate. In examining this contention, we must remember just what the employers are trying to do. They are attempting to prevent payment of public funds in which they have no direct interest, by a body specially charged with the duty of making such payment. We held, in Bodinson Mfg. Co. case, *supra*, that they are aggrieved parties entitled to demand judicial review. But the question here is not whether they are aggrieved to the extent necessary to gain standing on appeal or review. The question is whether the payment of benefits at this time constitutes such an immediate and irreparable injury as to warrant the drastic step of interfering with an uncompleted administrative proceeding, in defiance of an established rule of jurisdiction. To this question there are several decisive answers.

''In the first place, their whole contention is purely speculative. The maximum contribution which they can be required to pay under the statute is 2.07 percent. This cannot be increased, and the extent of their possible injury would therefore be the loss of a hoped for lower rate under the so-called .merit rating provision of the statute. This provision enables employers with a favorable employment experience to obtain a slightly lower rate of contribution, when their account on the commission books shows an excess of contributions over benefits paid. (See secs. 39, 40, 41.) But the narrow range in which the contribution rate fluctuates can be affected by a variety of circumstances and by numerous instances of unemployment. It cannot be determined at the present time whether this particular order of payment would, in the light of all the occurrences of the past year and any other period involved, actually result in a changed rate. (See 88 Univ.Pa.L.Rev. 137, 142.)

''Second, it is provided in section 67 of the act that in the event that any payments of benefits are found to be erroneous, the particular employer's account shall not be charged with them. This being so, it is not clear how his contributions can be increased by the payments, since the factor determining the rate is made inapplicable in such event.''

It seems clear to us that the legislative intent was that when the award of the adjustment unit is affirmed or ordered by the referee the benefits begin for the beneficiary

for whom this social legislation was primarily adopted, with that protection for the employer already noted in the quotation last made from *Abelleira* v. *District Court of Appeal,* *supra,* in the event of a later reversal of the award made by the commission. Section 67 of the act affords this protection, and that portion of the writs of mandate herein, the validity of which is conceded, provides for such protection when they direct that the commission correct its books and records to ''remove and cancel any charges made against petitioner's account with respect to'' the challenged payments, and ''to make no entries in such books and records charging any such payments against petitioner's account.''

Petitioners urge that the commission inherently possesses the right to recover benefit funds from those who have received them pursuant to an erroneous adjudication by the commission. This argument is predicated upon the remedy well known to common law and universally recognized by statute, commonly referred to as the remedy of restitution. Generally speaking, it is a power reposed in appellate tribunals to not only reverse an erroneous judgment but to restore to the aggrieved party that which he has lost in consequence of such judgment. As we view petitioners' contention in this regard it is that in contemplation of law there was an implied promise on the part of the beneficiaries to return such benefit payments in the event the commission order awarding same to them be later reversed. Ordinarily it certainly must be conceded that when money is collected upon an erroneous judgment, which subsequent to the payment of the money is reversed, both equity and good conscience irresistibly dictate the legal conclusion that the money belongs to the person from whom it was collected. But in the instant case we are confronted with a situation wherein the Legislature concluded, as stated by the Supreme Court in the case of *Abelleira* v. *District Court of Appeal, supra,* at page 299 ''on the basis of normal experience that the large majority of the administrative orders will be proper, and that to permit this justifiable and necessary payment to be postponed for long periods would defeat the objectives of the act.'' At the time the Unemployment Insurance Act was before the Legislature at its 1939 session the lawmaking body in its declaration of state policy as a guide to the interpretation and application of the act stated therein (Deering's 1939

Supp., Act 8780d, p. 1699). "The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." As heretofore narrated in this opinion, section 67 of the act makes payments thereunder mandatory, and if as stated by the Supreme Court in *Abelleira* v. *District Court of Appeal, supra,* such mandatory and authorized payments cannot be stayed pending judicial review because to do so would in effect practically nullify one of the prime objects and purposes of the law, then surely it must be said that if such payments are coupled with the obligation on the part of the beneficiary to make restitution in the event of a later reversal of the commission's decision by the courts, an equally great or greater hardship would be visited upon the claimant than would ensue from a long postponement of benefits under a stay order pending ultimate decision on appeal. Again, as stated by the Supreme Court in *Abelleira* v. *District Court of Appeal, supra,* at page 298 "The very essence of the act is its provision for the prompt payment of benefits to those unemployed." We can find no warrant in the act for the assumption that the legislative purpose and intent was to do anything except what would alleviate the suffering occasioned by involuntary unemployment by making payments during the existence of such condition even though the validity of such payments might be in the process of debate in the courts, and that it was not intended to visit upon the unemployed beneficiary of the fund the burden and responsibility of refunding such payments if it was later determined that the commission, although acting in good faith, has misinterpreted the law. The repeal of the sections which conferred power of recoupment and to which we have heretofore alluded gives strength to the conclusion just announced as well as to a holding that both the purposes and objectives of the act as well as the legislative intent expressed therein indicate that the Legislature after repealing the recoupment sections purposely refrained from providing any legal procedure or authorization by which the commis-

sion could recoup benefits paid under and in accordance with the express mandate of the statute as contained in section 67 thereof.

For the foregoing reasons, it is ordered that the judgments appealed from and the peremptory writs of mandate issued thereon be modified by striking therefrom the following language: ''and to take all such steps as may be proper to make the unemployment trust fund whole by reason of the erroneous payment of unemployment benefits to said co-respondents in pursuance of such decision.'' As so modified the judgments, and each of them, are affirmed. Petitioners-respondents to recover costs on appeal.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 25, 1943, and appellants' petition for a hearing by the Supreme Court was denied June 24, 1943. Curtis, J., voted for a hearing.