[Civ. No. 10141.   Second Appellate District, Division One.—April 9, 1936.]

FRED THOMPSON, Respondent, v. ROBINSON–ROBERTS COMPANY (a Corporation), Appellant.

John W. Holler and A. H. Blum for Appellant.

John S. Steely and Arthur Wm. Green for Respondent.

WHITE, J., *pro tem.*—Appeal by defendant from a judgment awarding damages to plaintiff for personal injuries sustained by the latter while repairing a gasoline engine owned and operated by defendant.

This appeal turns largely on the question as to whether plaintiff stood in the position of an independent contractor, or was the servant or general employee of defendant. There was a sharp conflict in the evidence concerning the nature of plaintiff's employment, but the trial court resolved that conflict in favor of plaintiff.

The trial court found that plaintiff ''was not a regular employee of the defendant'', but was ''employed for this one job''. In determining the sufficiency of the evidence to support such finding, and the judgment predicated thereon, we deem it appropriate to epitomize the testimony offered on behalf of plaintiff, which, in its material aspects, was that defendant was employed by the county of Los Angeles to remove a boat grounded on the shore off Redondo Beach. In performing this task defendant utilized the services of a diver. Air was provided the diver by a gasoline engine and compressor. The gasoline engine being in need of repairs, plaintiff, who was regularly employed as a mechanic in a near-by garage, received a call to come onto defendant's barge and fix a gasoline motor. Upon arriving at the barge, plaintiff encountered C. O. Roberts, vice-president of the defendant corporation, when, according to plaintiff, Roberts asked plaintiff if the latter was a mechanic, to which plaintiff replied in the affirmative. Roberts then said, ''Do you know anything about that motor?'' to which plaintiff responded, ''Yes— what's the matter with it?'' Thereupon Roberts said to plaintiff, ''We don't know what's the matter with it, but we have had our own men working on it, and they can't seem to get the motor to run. Can you fix it?'' Upon plaintiff's

saying, "Yes, I can fix it," Roberts replied, "Go to work on it and fix the motor." According to plaintiff, no price was agreed upon for his work, but he testified he was later paid $13.25 for his services. The testimony of Mr. Roberts, vice-president of defendant corporation, differed sharply from that of plaintiff, in that Roberts testified that plaintiff had been working for two or three days prior to the date of the accident as an operator on the engine, and was paid $5 per day for his services.

Proceeding to make the necessary repairs, plaintiff cranked the motor a couple of times, and the third time he did so, the crank came off and struck plaintiff in the mouth, injuring him in and about the mouth, face and nose. It appears from the testimony that a pin in the crank was loose and came out, thus causing the crank to fly off.

After viewing this evidence from every side, we are brought to the conclusion that, believing plaintiff's evidence, the trial court was justified in determining that plaintiff, in repairing the gasoline engine, was not a regular employee of defendant, but was engaged solely "for this one job"; and that the findings, together with the facts hereinbefore set forth, compel the conclusion that plaintiff was an independent contractor. (*Maryland Casualty Co.* v. *Pillsbury*, 172 Cal. 748, 749, 751 [158 Pac. 1031] ; *Bennett* v. *Truebody*, 66 Cal. 509, 511, 512 [6 Pac. 329, 56 Am. Rep. 117].)

■ An independent contractor is one who is engaged in performing certain acts or work for another, but who in performing such acts or work, exercises an independent calling— that is, a calling in which no right of control or direction is reserved to or vested in or exercisable by the party for whom the acts or work are to be done. (13 Cal. Jur. 1015 [citing cases].)

The real test, therefore, as to whether a person is an independent contractor or a servant, is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control over or direction of the latter with respect to the manner in which the details of the work are to be performed; and, therefore, this test or element "must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed". (Labatt on Master

and Servant, sec. 18, p. 56; *Barton* v. *Studebaker Corp. of America*, 146 Cal. App. 707, 715 [189 Pac. 1025].)

As some evidence of the relationship between the defendant corporation and plaintiff Thompson in this case, we may refer to the fact that plaintiff was regularly employed as a mechanic in a garage, and, according to plaintiff's testimony, was engaged by the appellant simply and solely to repair the gasoline engine. The evidence in the instant case indicates that respondent was not told or instructed how he was to do it, in what manner the work was to be done, nor what means he was to employ in accomplishing the result. So far as the evidence shows, he was not required to report to work at any given or particular time, nor to work for any particular length or period of time each day, nor, so far as plaintiff's evidence shows, was there any specific or definite arrangement entered into with him for a daily wage or other specific compensation. The respondent herein was responsible only for results, and his only duty was to take in hand the task of repairing the engine. Section 2009 of the Civil Code thus describes a servant:

"A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter who is called his master."

Plaintiff's evidence, which from the findings was apparently believed by the trial court, disclosing the nature of the contractual relationship between the defendant corporation and plaintiff Thompson, it seems to us, clearly indicates that the relation of master and servant, within the legal definition of that relation as given by the section of the code above mentioned, did not exist between the defendant corporation and respondent herein at the time the accident occurred in which respondent was injured. On the other hand, it is clear from plaintiff's testimony that while he was engaged to repair the gas engine he was exercising an independent calling. He was, in other words, an independent contractor, and as to the means by which he was to execute or perform the work which he assumed in his engagement with the defendant corporation to do, the latter had no control over him.

Appellant's second contention is that, conceding respondent herein was an independent contractor, there was not a scintilla of evidence in the record to prove that appellant had any knowledge of the existing defect in the crank, and that the same means of ascertaining the defectiveness of the crank, if any existed, was as much available to the respondent as it was to the appellant or its employees. We are not in accord with these contentions of appellant, because the witness Calvin L. Dain testified that immediately following the accident defendant corporation's vice-president, Roberts, said to Dain, "Are you a welder?" to which Dain replied, "Yes," whereupon, according to the witness, Roberts said, ".Would you weld this on before we kill somebody with that crank? There is two men already cracked their heads with it." While the evidence is in conflict as to whether the defect was latent or could with reasonable care have been observed, there is in the record evidence of sufficient substantiality to sustain the trial court's finding that the respondent herein was free from negligence in not noticing the defect in the crank, while there is positive testimony that defendant corporation's vice-president knew of the existence of the defect and of previous accidents caused thereby. In our opinion, there rested upon appellant the duty and obligation to inform respondent of the defective condition of the crank before permitting respondent to use the same in repairing the engine.

For the reasons herein given, the judgment appealed from is affirmed.

Houser, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 28, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 8, 1936.