[Civ. No. 2035.   Fourth Appellate District.—September 23, 1937.]

JAMES T. BROOKS et al., Respondents, v. M. EDWARD
JOHNSON, Appellant.

Wright, Monroe, Thomas & Glenn for Appellant.

A. J. Getz and William J. Claassen for Respondents.

MARKS, J.—This is an appeal from a judgment in favor of plaintiffs for damages resulting from a collision between an automobile owned and driven by James T. Brooks in which plaintiffs were riding and one owned by M. Edward Johnson and being driven by Harry Webber. The accident happened on July 8, 1935, on the Lincoln Highway in the state of Wyoming. It is admitted that at the time of the accident Wyoming had no statute of similar import to section 1714¼ of our Civil Code, which has now become section 402 of the California Vehicle Code.

It is admitted that the evidence supports the implied finding of the jury that Webber was negligent in the operation of the automobile being driven by him; that his negligence was the proximate cause of the accident; that plaintiffs were not guilty of contributory negligence. The sole question to be decided here is whether Webber was the agent, servant or employee of Johnson or the servant or employee of Bert Vroom and Vroom's relation to Johnson.

The evidence on this question is brief. It consists solely of the testimony of the two defendants. Vroom was not a witness in the case.

Johnson's deposition was taken and used by plaintiffs under the provisions of section 2055 of the Code of Civil Procedure. He was also called as a witness in his own behalf. The same is true of Webber.

Johnson's evidence may be summarized as follows: On July 8, 1935, he was an automobile dealer in San Diego operating under the name of Johnson Motor Company, selling

Hudson, Essex and Terraplane cars. Prior to that date he had purchased eight cars at the factory in Detroit and desired them driven to San Diego in a convoy. He engaged Bert Vroom to bring the automobiles to San Diego for $65 a car, Vroom to engage and pay the drivers and pay all expenses of the trip, including gasoline and oil for the automobiles. The only arrangement made with Vroom as to the drivers was a request by Johnson that they be local San Diego men with families and that Vroom select capable drivers of reputable character. Johnson did not see or talk to any of the drivers about the trip, did not agree to pay them anything, and paid them nothing. Other than on this particular convoy, Vroom had never performed any services for Johnson. Johnson designated to Vroom the route he was to take and informed him where he could buy gasoline and oil at considerable saving,—places having suitable camps, where other caravans had stopped before. Johnson directed Vroom as to when and where and how often to have the oil changed in the cars. Johnson had seen and talked with Webber concerning some political activities once before the trip and was informed by Vroom that Webber was to be one of the drivers. Johnson furnished an automobile in which Vroom and the other drivers traveled to Detroit. This automobile was returned with the convoy.

Webber's testimony may be summarized as follows: He was engaged by Vroom to drive in the convoy: "I paid all of my costs for the round trip. As to the nature of my agreement or arrangement with Mr. Vroom about compensation for bringing the cars in,—well I tried at various times to get a set-up of the layout, and I never did get a definite idea as to what the set-up was. As a matter of fact, I don't know right now. Certain things were said relative to going and making this trip. He informed me that the company would pay the expenses and perhaps a nice little sum besides. Bert Vroom informed me of that. I think it was at his home one evening. I went out to see him. After the accident I returned to San Diego. I tried several times to get hold of Mr. Johnson but never did. I did not get to talk to him. . . . The understanding with Mr. Vroom was—there was nothing in writing—the understanding was that we boys, me included, were to receive our traveling expenses and a salary besides. He didn't stipulate as to how much. He did not

say from whom. There was nothing particular said about that. We left San Diego to go to Detroit at the instance of Mr. Vroom to transport some cars and were to be paid in a certain manner for that. There was nothing said as to the amount particularly, and I am not positive as to whether it was stated whether this money was to come from Johnson Finance Company through Mr. Vroom, who was my boss, so-called, or whether it was to come from some other source. Such instructions as there were were communicated to me by Mr. Vroom. The only instructions were as to the time of leaving and the manner in which we were to handle the cars. Between the four of us we were to take our turns in driving and our expenses were to be paid by him; all those incidental things. I advanced my own expenses but it wasn't supposed to have been paid by me. It was not reimbursed. There was no other business to transact on this trip other than convoying these cars to San Diego.''

Under the facts of this case it is necessary that the evidence establish that Vroom was acting as the authorized agent of Johnson in hiring Webber in order to render Johnson liable for Webber's negligence. (*Nofsinger* v. *Goldman*, 122 Cal. 609 [55 Pac. 425] ; *Ewing* v. *Hayward*, 50 Cal. App. 708 [195 Pac. 970].) The burden of proving agency rests on the party alleging it. This rule does not conflict with that announced in *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570], and other cases of similar import because those cases ground their conclusions on the construction of particular statutes not involved here.

Two important elements in determining the status of a person as an employee or as an independent contractor are the right of control and the right of discharge. (*Winther* v. *Industrial Acc. Com.*, 16 Cal. App. (2d) 131 [60 Pac. (2d) 342] ; *Bohanon* v. *James McClatchy Pub. Co.*, 16 Cal. App. (2d) 188 [60 Pac. (2d) 510] ; *Hillen* v. *Industrial Acc. Com.*, *supra*.) If the person for whom the services are being performed has not the right of complete control over the person performing them and the right to terminate the services before completion, the relationship is very generally held to be that of independent contractor and not of employer and employee.

It is obvious from the evidence we have outlined that Johnson did not reserve to himself the right to control the operations of the convoy. It is true that he selected the

route it should follow. This is nothing more than the right often exercised by a shipper of freight by rail to select the route over which his property is to be transported. The exercise of this right has never been held to constitute the common carrier the agent, servant or employee of the shipper. The only other positive direction given by Johnson was as to the oiling of the automobiles. This direction indicated only an interest in the final result of the contract; that the automobiles arrive in San Diego in good condition and fit for sale. (*Winther* v. *Industrial Acc. Com., supra.*) These two directions do not indicate that Johnson reserved to himself the right of complete control over the conduct of the convoy that is necessary to establish the relation of principal and agent or master and servant. (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 Pac. 721]; *Barton* v. *Studebaker Corp. of America,* 46 Cal. App. 707 [189 Pac. 1025].) On the contrary, it affirmatively appears that the details of the conduct of the convoy from the time of the hiring of the drivers to the return to San Diego were in the exclusive control of Vroom. There is no intimation in the record that Johnson had any right to terminate the contract with Vroom before the cars were delivered in San Diego. He had no right of discharge. The contract was for the transportation of the cars from Detroit to San Diego for $65 per car, all expenses to be paid by Vroom. It follows that he was an independent contractor and not the agent, servant or employee of Johnson.

As Vroom was an independent contractor and as Webber was working for him, Johnson was not liable for the negligence of Webber.

Johnson has appealed from the judgment "and from all orders made in connection therewith". He moved in the alternative for judgment notwithstanding the verdict or for a new trial. The order denying a motion for judgment notwithstanding the verdict is appealable while the order denying the motion for new trial is not. (Sec. 963, Code Civ. Proc.) If it was the intention of Johnson to bring these orders before us for review we believe that the reference to them in his notice of appeal is too vague to properly effect that purpose. The attempted appeal from the orders is therefore dismissed.

Judgment reversed.

Jennings, Acting P. J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 22, 1937.