[Civ. No. 15963. Second Dist., Div. Three. Apr. 7, 1948.]

ECTON ANDERSON, Respondent, v. RICHARD GORHAM
BADGER, Appellant.

A. W. Brunton for Appellant.

Henry C. Rohr for Respondent.

SHINN, Acting P. J.—This is an appeal by defendant from a judgment in the amount of $2,250, which sum plaintiff had paid to defendant on account of the purchase of a machine which was not furnished or·delivered to plaintiff. A machine was shipped to plaintiff by W. E. Brandt, of Pittsburgh, but it did not meet the specifications of plaintiff's order. It was rejected by plaintiff and was sold for a nominal sum to meet shipping charges. Defendant had a cross-complaint, to be referred to later, on which judgment went against him.

Two questions were presented to the trial court, (1) was defendant the vendor of the machine or only plaintiff's agent for the purchase of it from a third party, and (2) did defendant, as vendor or as agent, fail to perform his duty to furnish the machine according to plaintiff's order.

Plaintiff's purchase order, hereinafter referred to as the agreement, contained the following controlling provisions: "To Badger & Co. . . . Dear Sirs: This is your authority to purchase for us as our agents in this transaction the equipment described below subject to instructions, specifications and conditions as noted. . . . 1 3″ New Britain, 6 spindle, originally chucker changed over for bar operation, Rebuilt in 1942. Machine in Good Condition. $4250.00." Handwritten on the printed form was the following: "Money deposit on Davenport may be applied on this order—whichever order accepted by original supplier first." "It is understood that all representations and guarantees in connection with this order, are those of the original supplier. Badger & Co. assumes no further responsibility other than to properly apply all monies received. It is understood that Badger & Co. will purchase the foregoing equipment from the original supplier at a lesser amount than the purchase price herein offered and that said difference in cost and the foregoing offered price is to be retained by Badger & Co. for services rendered in locating and purchasing said equipment. We further agree that if the equipment herein described is not taken by us according to this offer, the entire balance shall immediately become due and payable together with any attorney fees or legal expense which may be incurred in the collection thereof. In addition, shipping costs and any State and Federal taxes involved, are to be paid direct by Anderson Precision Shop. It is specifically understood that the balance due is to be paid upon notification of arrival of the bill of lading, or not later than the date of arrival of the shipment at Los Angeles, Calif. This order is not subject to cancellation or refund except by agreement with Badger & Co. and the original supplier." The contract also contains the following provision: "All machines ordered on this form in Rebuilt Condition carry a 30 day guarantee from date of shipment from the original supplier, as per OPA Rebuilt & Guaranteed regulations. All prices are made subject to the regulations of the Price Stabilization Divn. of the Advisory Commission to the Council of National Defense. Should any prices be made that exceed the ceiling price so established by this Division, through misunderstanding or error, any excess

charge will be gladly refunded upon proper representation.''
The explanation of the reference to the money deposited on the
Davenport machine is that plaintiff had ordered such a ma-
chine through defendant and had paid on account of the
purchase $2,250. The machine was never delivered and al-
though defendant had forwarded a part of the purchase price
of the Davenport machine it had been returned to him at the
time the New Britain machine was ordered. Plaintiff alleged
in his amended complaint that the agreement did not express
the true intent of the parties; that he was misled to believe
that he was dealing with defendant as vendor of the machine
and was induced by defendant's fraud to sign the agreement
without reading it. The findings were that the agreement was
not induced by fraud of defendant. Therefore, the writing
must be taken as expressing the full agreement of the parties.

The court made findings to the effect that defendant on
November 5, 1944, offered for sale one 3-inch New Britain
6-spindle automatic machine for $4,500, and held out to plain-
tiff that he was in a position to supply said automatic machine
capacitated to handle 3-inch stock material; that defendant
offered said machine for sale for $4,250, the same being
originally a chucker machine changed over for bar operation;
that plaintiff understood that he was buying an automatic
machine that would handle 3-inch bar stock, and that plaintiff
and defendant both had in mind such a machine. It was found
that the machine shipped was not an automatic machine
capacitated to handle 3-inch stock material, and that nothing
could be done to make it handle 3-inch stock bars; that upon
discovering these facts plaintiff promptly rescinded his pur-
chase. The defense relied upon is that defendant merely
undertook to act as plaintiff's agent, that he ordered the
machine specified by plaintiff from W. E. Brandt, of Pitts-
burgh, thereby fulfilling his obligation as agent, that he was
charged with no negligence, was not found to have been negli-
gent, and in fact was not negligent. This defense is based upon
defendant's interpretation of the agreement as one of mere
agency and in no respect an agreement upon defendant's part
to furnish the specified machine.

The answer to the question whether defendant was
an independent contractor or only plaintiff's special agent is
determinative as to defendant's liability if he is found to have
been the vendor of the machine, since he did not deliver the
machine plaintiff ordered. If the agreement be interpreted as
effective to appoint defendant as agent, the question would

still remain whether he obligated himself to acquire for plaintiff and to deliver the particular machine ordered by plaintiff. If he assumed such an obligation it is immaterial whether he did so as an independent contractor or pursuant to his appointment as agent. The obligations of an agent, of course, are measured by the terms of his agreement. One of the conclusions of law was that defendant breached his agreement and that plaintiff was entitled to judgment "whether the contract is deemed to be one between a principal and agent, or between vendor and vendee, as the same rules of contract apply."

The trial court correctly interpreted the agreement as one that required defendant to acquire and deliver the machine ordered by plaintiff. This conclusion is sustainable under either of two theories of interpretation. The first is that no relationship of principal and agent was created by the agreement. This theory has support in the features of the relationship of principal and agent which distinguish it from that created by the undertakings of an independent contractor.

If the one who is to perform the service is subject to control as to the manner of performance by the one for whom the service is rendered he is an employee, or agent, whereas, if he is not subject to control but is engaged to produce a certain result by means and in a manner of his own choosing he is an independent contractor. The right of discharge, although not necessarily controlling is an important factor in identifying the relationship. (Rest., Agency, § 1 (1, 2), § 2 (1, 3); *Burlingham* v. *Gray*, 22 Cal.2d 87, 94 [137 P.2d 9]; *Brooks* v. *Johnson*, 22 Cal.App.2d 618, 621 [72 P.2d 194]; *Thompson* v. *Robinson-Roberts Co.*, 13 Cal.App.2d 166, 168 [56 P.2d 599]; *Barton* v. *Studebaker Corp. of America*, 46 Cal.App. 707, 715 [189 P. 1025]; *Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 120 [210 P. 820].)

Plaintiff had no right of control over the actions of defendant. The understanding was that defendant was to accomplish a certain purpose or result, he alone to choose and follow the means by which it would be accomplished. This was the obligation of an independent contractor. Furthermore, the agreement did not reserve to plaintiff the right to discharge defendant as his representative. Upon the contrary, he was firmly bound to accept the machine and to pay for it when it was delivered, and payment could be enforced by defendant. Plaintiff's agreement to purchase could not be terminated

without the consent of defendant and the original supplier from whom defendant was acquiring the machine. Hence, the essentials of the relationship of principal and agent were lacking.

■ If the obligations assumed render one an independent contractor, that relationship is not changed to one of agency by his being designated in the contract as an agent. A statement in a contract that one of the parties is thereby appointed agent of the other will be disregarded if the contract as a whole shows that it was not a contract of agency but a contract whereby one party agreed to sell certain articles to the other at a stated price. (*Bessing* v. *Prince*, 52 Cal.App. 190 [198 P. 422].) ■ A statement in an agreement that one party is to act in a transaction solely as the agent of the other will be disregarded if it is shown that the assumed relationship was not, in fact, one of agency but that the one ostensibly appointed acted throughout as the agent of a third person. (*State Finance Co.* v. *Smith*, 44 Cal.App.2d 688 [112 P.2d 901].) ■ Whether the parties to a contract have created a particular relationship depends upon their actual intention as determined from the writing in accordance with the ordinary rules governing the interpretation of contracts. (*Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 765 [128 P.2d 665].) ■ The trial court would have been justified in disregarding the purported appointment of defendant as agent, if it had been found necessary to do so in order to give effect to the intentions of the parties.

■■ A second reason supporting the trial court's interpretation is that if effect should be given to the purported appointment of defendant as agent it would have to be one which was so limited as to be consistent with and subordinate to the general intent and purposes of the whole contract, under the rule stated by section 1652 of the Civil Code, reading as follows: "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." If the relationship was purely one of principal and agent, defendant would have been obligated only to use ordinary care in the performance of his duties, whereas, if his agreement was to furnish the machine as ordered, failure to fulfill his agreement would not be excusable on the ground that he had been free from neglect. If, therefore, the general intent and purpose was to bind the respective parties as they would be bound by a purchase and

sale agreement, a limitation of defendant's obligation to that of a mere agent would obviously be repugnant to the general intent and purpose.

It is not impossible to give some effect to the purported appointment of defendant as agent. If, for instance, he had acquired the machine for himself and had refused to deliver it to plaintiff, the court might under proper circumstances have held that he acquired it as agent and for the use and benefit of plaintiff. But the mere fact that under some circumstances the relationship of principal and agent might have been recognized furnishes no reason for giving such effect to the agency feature as would be destructive of the substance of the agreement. Furthermore, when an agent has bound himself to accomplish a certain result for his principal, he must perform his agreement. There is no room for doubt as to the law once it is established that the agent has bound himself to do a specific thing. Elementary rules are found in the Restatement, Agency, as ''the existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties interpreted in the light of the circumstances under which it is made.'' (§ 376.) ''A person who makes a contract with another to perform services as an agent for him is subject to a duty to act in accordance with his promise.'' (§ 377.) ''Also the agent may warrant that his undertakings will be successful or that he will render service which, irrespective of the quality of its performance, will be satisfactory to the employer. In such cases there is a breach of contractual duty or a failure to perform a condition by the agent if he fails to accomplish what he agreed would be achieved.'' (§ 379, com. a.) See, also, section 400. ''An agent who commits a breach of his contract with his principal is subject to liability to the principal in accordance with the principles stated in the Restatement of Contracts'' and comments a and b with respect to the agent's liability: ''There are no rules which are peculiar to agency . . . thus if an agent employed to purchase goods from a third person for the principal, fails to purchase them, thereby breaking his contract with the principal the agent is subject to liability to the principal for the value of the contract which he should have obtained.''

The interpretation given the agreement by the trial court is borne out by a consideration of the circumstances under which it was made and the matter to which it related (Civ. Code, § 1647.) Defendant advertised that he had a particular

machine for sale, and, as found by the trial court, represented to plaintiff that he was in a position to furnish it. The entire matter of acquiring the machine was in the hands of defendant. There was nothing that plaintiff was required to or could do about it. Plaintiff could not have bound himself more firmly by the agreement if defendant had then had title to the machine.

Defendant's undertaking to *purchase* the machine for plaintiff obligated him to buy it, acquire it, obtain title to it. This is the sense in which the verb is commonly used as defined by the lexicographers and the courts. (51 C.J. 93; the word "purchase" implies acquisition of title, *Greer* v. *Blanchar,* 40 Cal. 194; *Marsh* v. *Lott,* 8 Cal.App. 384, 391 [97 P. 163]; *People* v. *Cockrill,* 62 Cal.App. 22, 33 [216 P. 78]; *People* v. *Superior Court,* 10 Cal.2d 288, 294 [73 P.2d 1221]; *Reiter* v. *Anderson,* 87 Cal.App. 642, 648, 650 [262 P. 415]; see, "purchase"—["acquisition"] 35 Words & Phrases, p. 476.) It is clearly the sense in which it was used by the parties. Therefore, the court properly construed the agreement as one by which defendant obligated himself unconditionally to furnish a specified machine for the price stated.

The sole remaining inquiry is whether defendant fulfilled his obligation. It is undisputed that defendant placed with Brandt an order for the machine as described in his agreement with plaintiff, and that he paid the purchase price asked by Brandt of $3,500, using $2,250 which he had received from plaintiff and $1,250 of his own. It is also undisputed that plaintiff and defendant inspected the machine upon its arrival in Los Angeles, and that plaintiff promptly refused to accept it because it did not meet his specifications.

A 3-inch 6-spindle bar machine was described by plaintiff as one that would take 3-inch bar material in each of the 6 spindles and make the bar stock into parts automatically, whereas, a chucking machine generally has three jaw chucks on it which are usually opened and closed by hand, "to chuck a piece on the surface." It is clear from the testimony of plaintiff that he expected to get an automatic machine that would handle 3-inch bar stock and that defendant so understood it. Plaintiff testified that he exhibited to defendant the fuse body for an ordnance shell which he was manufacturing from round bar stock of 2-9/16 inches diameter. From this evidence the court could reasonably have concluded that the parties understood the description in the agreement to mean that the machine would take bar stock of 3-inch diameter.

The evidence established without conflict that the machine was originally a chucker, or hand-operated machine, that some work had been done to change it over to a bar machine, that this work had not been completed before the machine was shipped, and that it could not be changed into a bar machine that would machine a bar of more than 1 inch diameter, for a length of 5 inches in a single operation. Brandt evidently did not have a machine that would meet the specifications of the order that was placed with him. The machine that he was offering for sale did not meet the specifications of the order as plaintiff and defendant understood them. The machine had not been fully changed over from a chucker to a bar machine. It would not handle, and could not be made to handle, 3-inch stock.

Upon these facts, no purchase of a machine was accomplished. Brandt did not deliver the machine that defendant ordered and defendant did not order or accept the machine that Brandt shipped to plaintiff.

Defendant quotes the following from the contract: "It is understood that all representations and guarantees in connection with this order, are those of the original supplier. Badger & Co. assumes no further responsibility other than to properly apply all monies received," contending that he was required only to place the order and that Brandt had the sole responsibility to furnish plaintiff the machine as ordered. Such an interpretation of this provision is untenable, in view of what we have said.

By his cross-complaint defendant sought recovery of $1,250, which he had paid in addition to the money provided by plaintiff, and also $750 as lost profits and $250 attorney's fees. For the reasons we have stated, he was not entitled to recover on the cross-complaint.

This appears to us to be an appropriate occasion for some observations as to the matter of findings. The court found all of the allegations of defendant's answer to plaintiff's first amended complaint to be untrue, and all the allegations of plaintiff's answer to the cross-complaint to be true. Our analysis of these pleadings involved a considerable waste of time and it disclosed that the court thereby found to be untrue numerous allegations of facts which were admitted by the pleadings and others which were established by other admissions of the parties and by uncontradicted evidence, and also found many facts as to the terms of the agreement which were directly contrary to its clear provisions. We are

able to disregard certain of these unfounded and obviously incorrect findings because they are in conflict with admitted facts, and others because they are not controlling as to the questions involved on the appeal. The court has been unduly burdened with the task of analyzing and reconciling the conflicting findings, and in arriving at the conclusion that, considered with the pleadings, they furnish support for the judgment. This is not the first time we have had occasion to say that findings should be prepared with great care and accuracy in order to establish the true factual basis for the court's decision. It happens with great frequency that broad, general findings do not speak the truth. The burden of the trial court, and of the reviewing court as well, would be considerably lightened if attorneys generally would become more aware of their duty in the preparation of findings. It is a real responsibility and in some instances the most important one connected with the trial.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 3, 1948.