[Civ. No. 11555.  First Appellate District, Division Two.—February 10, 1941.]

W. E. WREAD, Appellant, v. COFFEY–MURRAY, INC. (a Corporation), et al., Respondents.

Arthur F. Larrabee and David H. Cannon for Appellant.

Faries & McDowell and Robert S. Burns for Respondents.

STURTEVANT, J.—From a judgment following an order granting the motion of the defendants for a nonsuit in an action for an accounting the plaintiff has appealed. The pleadings were copious. On the trial counsel stipulated in open court minutely regarding the issues. The judgment roll in a former action between the same parties was freely used by each of them. After the case had been so presented the defendants made a motion for a nonsuit, their motion was granted, judgment thereon was entered, and from that judgment the plaintiff has appealed.

On October 17, 1932, and prior thereto, W. E. Wread had been engaged in installing overhead doors. The record does not disclose that he had a factory, shop, or any equipment. At all times he referred to his overhead doors as an "invention" but as will hereinafter appear he held no patentable rights. On October 17, 1932, Wread, J. T. Coffey and F. B. Murray entered into a written contract. In substance that contract recited that W. E. Wread was the inventor and designer of a useful invention, the overhead door; that he had applied for and would apply for letters patent; that the parties to said contract intended to organize a corporation to manufacture and sell overhead doors; that the parties would form a corporation having a capital stock of $24,000 divided into 2,400 shares of the par value each of $10; that the corporation should have three directors; and that the corporation would take over said invention; that upon its organization an application would be made to the commissioner of corporations for a permit to sell stock; that upon receipt of the permit Wread would assign to the corporation his invention and improvements thereof; that Coffey and Murray, as soon as the permit issued, would advance to the corporation the sum of $500 as working capital, and that they would promote the said business; that the capital stock authorized by the permit would be issued to said persons in equal amounts, and that Wread should receive a salary of not less than $200 per month.

At about the same time a corporation, the defendant, was formed under the name of "Easy Overhead Door Corporation". On November 18, 1932, the commissioner of corporations delivered a permit authorizing the corporation to issue

to Coffey, Wread, and Murray, ten shares of stock each for $10 per share, such sums to stand against debts of the applicant theretofore paid by said persons. On or prior to December 5, 1932, Murray paid to the corporation, or for its use, $350, Coffey paid $445, but the record does not show that Wread paid in anything. On December 5, 1932, the corporation issued twenty shares to each of said persons. Each of said persons was elected a director. Coffey was elected president, Murray was elected secretary, and Wread was elected treasurer and vice president. On or about November 10, 1932, Easy Overhead Door Corporation engaged in the business theretofore conducted by Wread, and since has continued to install overhead doors. He participated until May 17, 1933, when he left the organization and ceased to take part in its operations. He has never assigned to said corporation his right, title and interest in and to said invention and in and to any letters patent issued under said or any subsequent applications. In another action, hereinafter more particularly referred to, the trial court made a finding that the device was not patentable. Hence Wread paid nothing for his stock. But, as we have stated, the permit provided that it should have been paid for in cash or by the payment of corporate debts in the full sum of $10 per share. An issue of stock at variance with said terms of said permit was prohibited and made a felony by the express provisions of the statute. (Secs. 3, 16, 17 and 18, Stats. 1931, p. 937 [Deering's Gen. Laws, 1937, Act 3814].) Such issue was void. (Civ. Code, sec. 1598.) On September 21, 1933, Wread resigned as director, treasurer, and vice president, and established a separate place of business. On January 31, 1934, he wrote defendants: ''You and each of you will please take notice that I have elected to declare void that certain stock and the certificate evidencing the same, issued to me in Easy Overhead Door Corporation, a corporation, for the reason that the stock was not issued in conformity with, or in substantial conformity with any authorization granted to the corporation by the commissioner of corporations of the state of California, and I hereby offer to do each and everything required of me to be done to void the said stock and the certificate evidencing the same. Please govern yourselves accordingly.''

He does not claim he is a ''stockholder'' but he asserts that since December 5, 1932, he has been the owner of a

one-third interest in Easy Overhead Door Corporation and as owner of such interest he asks an accounting. When he wrote the letter dated January 31, 1934, he knew all of the facts and he knew that the officers and stockholders of Easy Overhead Door Corporation knew all of the facts. Nevertheless he caused them to act, and they did act, on his letter. He may not now take a contrary position. (Code Civ. Proc., sec. 1962, subd. 3.)

Prior to January 31, 1934, an action was commenced by Easy Overhead Door Corporation, F. B. Murray and J. T. Coffey against W. E. Wread. On the date last mentioned a third amended complaint was filed. It contained four counts. The first and second counts sought to have the contract dated October 17, 1932, reformed. The third count asked that the defendant render an account. The fourth count asked for declaratory relief. The defendant in that action, Wread, filed an answer and cross-complaint. In neither pleading did he make any claim for an accounting. The judgment in that action is *res judicata* in this action. (*Sutphin* v. *Speik*, 15 Cal. (2d) 195 [99 Pac. (2d) 652, 655].) In other words the parties were not entitled to have an accounting of the obligations of one of the parties taken in the first action and an accounting of the obligations of the other parties taken in the second action—they could not split an action of accounting into pieces.

In presenting his case the plaintiff bases much of his argument on the fact that in his letter dated January 31, 1934, he had used the word void and that the statute (Stats. 1931, p. 937, sec. 16) uses the word voidable and therefore his letter should not be accepted as an admission that the issue of stock to him, without any payment being made therefor, was void. We think he errs in construing said section. Before said section was enacted it was settled law that a purported agreement in direct violation of the terms of the express prohibitions contained in a statute was void. (Civ. Code, secs. 1598, 1599; 13 C. J. 412, "Contracts", sec. 342.) The main purpose in the enactment of the statute (Stats. 1931, p. 937) was to prevent the issuance and sale of spurious documents purporting to be securities. It is obvious that the legislature did not intend by enactment of that statute to make the rule less drastic, but if anything to make the statutory rule more drastic. Therefore when it wrote sec-

tion 16 using the word voidable we think it is clear the word was inadvertently used for void. No doubt on certain occasions persons may unintentionally violate the terms of a permit theretofore issued by the commissioner of corporations. Such violation may arise by reason of the permit being unduly narrow. Recognizing that fact, the legislature provided in section 16 that under certain circumstances the commissioner might issue a new permit in effect validating the prior invalid issues. Such we believe to be the meaning of section 16, Statutes of 1931, page 937. However we are clearly of the opinion that said section, read in connection with all of the other provisions of the statute, was not intended as a repeal of the common law rule nor a modification or repeal of the provisions of sections 1598 and 1599 of the Civil Code.

In the first action the trial court made a finding that, subsequent to the date of the issue of the permit, Coffey and Murray paid in $195. The plaintiff argues that therefore stock issued in a sum exceeding $195 was invalid. It is sufficient to state that the trial court made no finding to that effect. According to the clear terms of the permit the corporation was entitled to issue stock against the indebtedness of the corporation whether the payment thereof was made by the stockholders prior or subsequent to the issue of the permit. Furthermore it was entitled to issue to each stockholder not to exceed fifty shares of its stock at par for cash. There is no finding that the moneys paid in by Murray and Coffey were not paid in accordance with said permit.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.