[L. A. No. 18410.   In Bank.   Dec. 22, 1943.]

MRS. BETTY MARX, Respondent, v. R. L. McKINNEY et al., Defendants; FRED P. GLICK, Appellant.

440

Ben Gould for Appellant.

J. F. Rosen and H. Wolpin for Respondent.

SCHAUER, J.—Plaintiff herein sued upon two alternative causes of action:

1. For money received prior to November 1, 1938, by defendant and sole appellant Fred P. Glick, "individually and doing business as Fabriform Steel Products Co., successor to the Welded Products Co. Inc., . . . for the use and benefit of one, George Karp, the plaintiff's assignor."

2. For money claimed to have been owing by defendant-appellant Glick to a judgment debtor of plaintiff, one R. L. McKinney (also named as a defendant herein), at the time of levy upon appellant, under the provisions of section 542, subdivision 6, and sections 543 and 688 of the Code of Civil Procedure, of a writ of execution issued upon plaintiff's judgment against McKinney.

The trial court, sitting without a jury, awarded judgment to plaintiff and against appellant Glick in the sum of $3,036, together with interest thereon at seven per cent per annum from May 20, 1940. Appellant makes various attacks upon the judgment, directing them at each of the two causes of action. As to the first of such causes he contends that the evidence sustains neither the finding that prior to November 1, 1938, Glick received the sum of $3,036 for the use and benefit of Karp, nor the finding that Karp assigned to plaintiff such chose in action against Glick. Inasmuch as we con-

clude that the evidence as augmented before us is sufficient to support the mentioned findings, and therefore the judgment, it is unnecessary to discuss the contentions advanced by appellant as to the second cause of action.

Prior to December 21, 1936, Welded Products Co., a California corporation, manufactured and sold to defendant McKinney a number of cleaning machines. McKinney resold the machines to various purchasers under conditional sales contracts, and then assigned such contracts to the Welded Products Co. as collateral security for the balance owing from McKinney to the corporation for the machines. On December 21, 1936, McKinney and Welded Products Co. agreed in writing that as of that date the corporation was holding assigned contracts with a total balance owing on them of $48,-004.32, to secure an indebtedness from McKinney to the corporation of $33,972.83; thus the total unpaid balance on such contracts amounted to some $14,000 more than McKinney then owed the corporation. On September 11, 1937, and as partial security for a promissory note executed by McKinney in favor of George Karp (plaintiff's alleged assignor, first cause of action), McKinney assigned to Karp "the sum of $3,036 out of monies due me from [the] contracts" held as security by Welded Products Co. The company was immediately notified of the assignment.

During the course of the above described transactions and prior to May 1, 1938, appellant Glick, doing business as Fabriform Steel Products Co., became the successor to Welded Products Co. During the same period of time and thereafter various sums were collected by the company and by Glick on the contracts held as security. Plaintiff contends that by November 1, 1938, the total of such collections was sufficient to pay off the $33,972.83 indebtedness from McKinney to the corporation (which the contracts secured), and also to pay to Karp the $3,036 which had been assigned to him by McKinney out of the same monies but which Glick refused to pay over to Karp. The trial court found in accordance with such contention; and although the evidence concerning the collections made on the assigned contracts is none too clear, after studying it carefully we have concluded that it was sufficient to support the finding. Such evidence includes that hereinafter epitomized.

It appears that on May 1, 1938, and subsequent to the as-

442

signment (made September 11, 1937) from McKinney to Karp, a written agreement was entered into between "Fred P. Glick, doing business under the firm name and style of Fabriform Steel Products Co., successor to Welded Products Co. Inc., hereinafter referred to as the 'Company,' and R. L. McKinney," whereby the parties stipulated that as of that date McKinney's indebtedness to the company on account of the cleaning machines mentioned hereinabove "shall be and is hereby settled, established and confirmed in and at the sum of Four Thousand Six Hundred Dollars." The agreement provided further that the total "balance of the . . . collateral security [the assigned contracts] for which the Company shall be accountable to R. L. McKinney" then stood at $13,762.89. McKinney testified however that, contrary to the provisions of this agreement, the company had "received practically every dollar owing them January 1st, 1937," that "they held ,out $4,600.00 as a liability of mine for the purpose of protecting themselves on assignments that I made," and that of the $4,600, when it was collected by the company, the California State Board of Equalization was to receive $1,800 pursuant to an assignment he, McKinney, had made to such board to cover delinquent sales taxes, and the other $2,800 was to be paid by the company to Karp. ▪ As it is established that persons who are not parties to, or claiming under, a written contract are not bound by its terms but may offer extrinsic evidence tending to show the true agreement between the parties thereto (see *Burlingham* v. *Gray* (1943), 22 Cal. 2d 87, 93 [137 P.2d 9], and cases there cited; 10 Cal.Jur. 918, sec. 186), the trial court clearly had the right to consider McKinney's testimony introduced for such purpose.

▪ The testimony of appellant's bookkeeper, called as a witness by appellant, discloses that between May 1, 1938, and November 1, 1938, appellant collected on the assigned contracts the sum of $2,616.90 and that on other occasions subsequent to May 1, 1938, additional sums aggregating $2,632 were collected. (The witness testified further that on specified dates between March 14, 1939, and January. 31, 1940, Glick had collected an additional $1,906.11 on the contracts.) Although the evidence does not affirmatively show that such $2,632 was received by appellant prior to November 1, 1938, it is not contended that that date is controlling or that failure to establish that the sum had been paid by 'then is fatal to

the judgment. Interest was allowed only from May 20, 1940. Moreover, the only person in a position to prove the exact dates of such payments was appellant, who received them, and he has failed to do so. Thus the trial court was justified in finding that after the agreement of May 1, 1938, between Glick and McKinney there was received by Glick the total sum of at least $5,248.90 ($2,616.90 plus $2,632) to which Karp's assignment attached, and that even after deducting from such total the $1,800 owing and assigned by McKinney to the Board of Equalization, there still remained in Glick's hands the sum of $3,448.90 from which he was obligated to pay to Karp (plaintiff's alleged assignor) the sum of $3,036 which McKinney had assigned to Karp.

We turn next to appellant's contention that the evidence fails to support the finding that Karp assigned to plaintiff his chose in action against Glick. After closely studying the record of proceedings in the trial court we concluded that it contained no evidence to support this finding. Therefore, acting pursuant to the provisions of section 956a of the Code of Civil Procedure (see also Cal. Const., art. VI, sec. 4¾) and in order to give plaintiff an opportunity to present such evidence if it existed, we appointed the trial judge to act as our referee to receive "evidence . . . directed to, and responsive to, the issues raised by the allegations" of assignment from Karp to plaintiff and "by such denial of those allegations as is contained in the answer of defendant Fred P. Glick" to the complaint. At the hearing before the trial judge sitting as our referee the plaintiff introduced into evidence a written assignment to herself of the promissory note executed by McKinney in Karp's favor for which, it will be recalled, the assignment from McKinney to Karp of "the sum of $3036 out of monies due me from [the] contracts" held by Glick, was given as partial security. Inasmuch as the assignment of a debt ordinarily carries with it all rights which are incidental to it, including all collateral securities or liens (see Civ. Code, sec. 1084; *Union Supply Co.* v. *Morris* (1934), 220 Cal. 331, 338-340 [30 P.2d 394]; 3 Cal.Jur. 279, sec. 32, and cases there cited; 6 C.J.S. 1143, sec. 87), the evidence of the assignment of the promissory note to plaintiff is sufficient to support the finding that the chose in action securing such note also passed to plaintiff.

Appellant has attempted to appeal from an order

denying his motion for leave to file an amended answer and cross-complaint and from an order denying his motion for a continuance. Such orders are not appealable and may be reached only through the appeal from the judgment. (See Code Civ. Proc., sec. 963.) Inasmuch as appellant's contentions that such motions should have been granted are not founded on any showing of substantial prejudice, no useful purpose would be served by discussing them.

The judgment is affirmed. The attempted appeals from the orders are dismissed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied January 20, 1944.