**ARTHUR MURRAY, Inc. v. HORST.**

Civ. A. 52–195.

United States District Court
D. Massachusetts.

March 3, 1953.

Simons, Schur & Straus, New York City, N. Y. and Joseph B. Abrams, Boston, Mass., for plaintiff.

Stewart C. Woodworth, William A. Ryan, Lyne, Woodworth & Evarts, Edwin

A. Cheney, and Herman Snyder, Boston, Mass., for defendant.

FORD, District Judge.

The plaintiff in its amended complaint asks for a judgment declaring a 1946 license agreement, marked "C" in the complaint, between Arthur and Kathryn Murray, co-partners, and the defendant be declared null and void. The agreement was assigned to plaintiff corporation December 16, 1946. Plaintiff also prays for an injunction restraining defendant from using the trade-mark "Arthur Murray" in his dancing enterprises. The background leading up to the filing by defendant of his motion to dismiss is set forth in defendant's brief, pp. 2 and 3.

In the amended complaint the plaintiff contends that the amended agreement (Exhibit "C" of the complaint) of November 25, 1946 is invalid because of "absence aforesaid of the right of control, * * * as well as due to the absence aforesaid of the actual exercise of control by plaintiff and its predecessors, * * * thereby failing to comply with the requirements of 'control' prescribed for the validity of a trade-mark license by the common law of trade-mark licensing, by the Massachusetts law of trade-mark licensing * * *."

The agreement provides in paragraph 23 that the contract involved (Ex. "C") shall be interpreted in accordance with Massachusetts law.

There is no dispute that a naked license without either transfer of good-will, the communication of a trade secret, or provisions for supervisory control of the product or services is invalid because of the public deception likely to follow.

For the purposes of the present motion to dismiss only plaintiff's contention of absence of "control" will be discussed. The question to answer in this connection is: Does the amended agreement (Ex. "C") contain provisions for supervision?

In paragraph 2 of the agreement the licensor agreed to furnish "such data and information which relates to the dancing business, including * * * the text and art work of all advertisements * * * methods of interviewing prospective pupils, methods of teaching dance steps and all sales procedures which Licensors * * * develop or use in connection with the operation of any dance school or dance advisory service * * *."

In paragraph 3 of the licensing agreement the licensee was to have exclusive use of the name "Arthur Murray" within the territorial limits of the contract.

In paragraph 5 the licensee agreed "to use all reasonable efforts to see that the methods of teaching and the steps taught are in accordance with the methods and steps promulgated by the Licensors"; also licensee agreed not to employ dancing instructors other than those who had attended a teachers' training class or course and to see to it that the instructors and supervisors employed would have an adequate knowledge of all the latest dancing steps and the "Arthur Murray Method" of teaching them. Licensee further agreed to maintain the highest possible standard of behavior among his employees.

The defendant, in paragraph 7 of the contract, agreed to honor in his studios unused dancing lessons from other "Arthur Murray" schools.

In the light of the provisions of the agreement as set forth, it appears, as defendant argues, that "precautions were taken to insure that the Arthur Murray name would continue to indicate to the public what it had in the past, namely, a type of instruction conforming to the standards and methods of Arthur Murray". It is plain we are not dealing here with a naked license.

The plaintiff, as stated, agrees that the trade-mark license is valid if "control" by the licensor over the licensee exists. Cf. Broeg v. Duchaine, 319 Mass. 711, 67 N.E. 2d 466; Associated Perfumers, Inc. v. Andelman, 316 Mass. 176, 55 N.E.2d 209; E. I. du Pont de Nemours & Co. v. Celanese Corp., 167 F.2d 484, 489, 35 C.C.P.A., Patents, 1061, 3 A.L.R.2d 1213. However, it argues that because the licensing agreement in paragraph 10 provided that the "Licensors * * * agree that they will not interfere directly or indirectly with the internal management of the Licensee's business * * *" it was unable to control defend-

ant's methods of operation of the licensed studios. The argument has no merit whatsoever. This provision did not relieve defendant of his obligations under the licensing agreement and in no way was the right of the licensor to supervise methods employed endangered by this provision. This phrase "internal management" is a concept entirely foreign to supervision of methods of dancing provided by the contract; internal management involves numerous factors with which obviously the licensor has no concern, i. e., financing, leases, business set-up, corporate or otherwise, and other aspects of business management. After all the licensee should have a right to manage his own affairs provided he observes the terms of his contract without the licensor taking over. A licensee acts wisely in not submitting to observation and management by the licensor of the many details outside the concern of the licensor. Also plaintiff and its predecessors could have exercised their right to see to it that defendant complied with his obligations under the contract and the fact that plaintiff did not choose to do so hardly helps their position. They take nothing by their inaction if they had the right to act, which I find they had.[1]

This court concludes that the licensing agreement in question is valid, at least on the ground there were provisions in the license to control defendant's methods of operation. In this view, there is no need of discussing in detail other reasons advanced by the defendant to support validity. It is plain, and I so find, there was a transfer of good will by Arthur Murray and this factor also is sufficient to validate the licensing agreement.

The motion to dismiss is allowed with costs to the defendant.

1. It is a bit difficult to understand plaintiff's position on the question of right of control. If I understand its brief, it is stated on page 8 that the validity of the defendant's license depends on existence of control. On page 15 plaintiff contends agreement was drawn with intention to give control. That is defendant's position—the right to control was given. It would seem if the right was given and defendant prevented its exercise plaintiff could avail itself of the breach of the agreement by resort to paragraph 21 of the agreement (arbitration clause) for a cure of the breach or cancellation. It is too late for the plaintiff to complain of this provision in the contract as preventing control. It is part of the agreement. Nor do I see how this clause prevents effective control.