[Civ. No. 20154.  First Dist., Div. Three.  Feb. 21, 1962.]

DIMITRI KASSIANOV et al., Plaintiffs and Appellants, v. VERA A. RAISSIS, Defendant and Respondent.

Harry P. Calvert, Murray Richards and Shirley, Saroyan, Cartwright & Peterson for Plaintiffs and Appellants.

Anderson, McDonald & Belden for Defendant and Respondent.

DEVINE, J.—Subsequent to the notice of appeal filed by plaintiff, plaintiff died and the appeal has been carried on by his personal representative. Decedent's name is given as Kacee, which was the one used throughout nearly all of the proceedings, although his true name was Kassianov, and decedent sometimes is referred to as "plaintiff" in this opinion.

The appeal is from a judgment that plaintiff take nothing on his complaint, which was based on an alleged loan of $5,000 to defendants, no part of which, according to the complaint, was repaid. Defendant Vera A. Raissis answered the complaint, generally denying, and later filed a counterclaim or cross-complaint for goods supplied and services rendered to plaintiff and cross-defendant in the sum of $5,000. The judgment awarded nothing on the cross-complaint.

Plaintiff in the trial court dismissed the action as to defendant Nick Georgeson and judgment of nonsuit was entered on behalf of defendant Angelo Raissis, husband of Vera. There is no appeal from said judgment of nonsuit.

Kacee and Nick Georgeson were long-time friends, having known each other in Manchuria in 1917. Vera Raissis is the daughter of Georgeson and also knew the plaintiff for many years. She was a practical nurse and had taken care of plaintiff professionally. He was 73 years of age and had defective sight and hearing, and was in ill health during the time relevant to this case. However, there is no contention that he was

mentally deficient or that any fraud or undue influence was practiced upon him. In July, 1956, Kacee handed to defendant checks amounting to $5,000 which were used, with Kacee's consent, for the purchase of a house in Mirabel Park, Sonoma County. Kacee and Mrs. Raissis went to the title insurance company to arrange for the purchase of the home. The testimony of Mrs. Raissis and of her father, Georgeson, was that Mrs. Raissis agreed to purchase the home and to obligate herself for the excess over $5,000 on the purchase price of $13,500, and to care for Kacee for his lifetime and to take care of his burial. Kacee had seen the home prior to the purchase and was pleased with it. A room was built for Kacee's use, the materials costing about $1,300 plus wages of Georgeson, who did the construction work, of $600. After the home was purchased Kacee went to live there, and Mrs. Raissis took care of him for about three months. Kacee then left the house because he was lonesome and was returned to San Francisco. Kacee testified that the transaction was simply a loan of $5,000, but testified merely that Mrs. Raissis had said that her husband would make the repayment. He did not state when repayment was to be made and he gave no explanation for the purchase of the Mirabel Park home.

Appellant relies largely on the receipt given by the title insurance company to Mrs. Raissis. This receipt contains the following: "Received 2 checks (1) $3,000.00 (2) $2,000.00, $5,000.00 from Mr. Phil V. Kacee. (Private unsecured loan to Buyer)" The receipt contains several other items relating to delivery of a deed of trust and prorating of taxes and insurance. Although Vera Raissis testified she had not read the receipt, the signature of Vera Raissis follows the word "Approved" at the bottom of the receipt. It is contended by appellant that by the language contained in the quotation marks a contract was made between Kacee and Raissis which cannot be altered by parol evidence.

The receipt was not signed by Kacee. Where the controversy is between a party to a written contract and one who is neither a party to it nor a privy to one who is, the rule excluding parol evidence to explain, vary, modify or contradict the writing does not apply. In such case neither the party nor the stranger to the contract is bound by the rule excluding parol evidence, because if one of the parties to the transaction is free to show the true character of the transaction, it must follow that the other party to the action is likewise free. (*Budd* v. *Hughes,* 176 Cal. 687, 689, 690 [171 P. 287]; *Mayfield* v.

*Fidelity & Casualty Co.*, 16 Cal.App.2d 611, 619 [61 P.2d 83] ; *Spraul* v. *Garliepp & Mack*, 138 Cal.App. 491, 494 [32 P.2d 657].)      Respondent was free to offer the parol evidence which the court found sufficient for the judgment which was rendered, and although the words in the receipt may have been regarded as an admission, the court was not bound to decide in accordance with an admission, even a written one, rather than to follow the testimony which contradicted it. (*Olson* v. *Cornwell*, 134 Cal.App. 419, 425, 426 [25 P.2d 879].)

Appellant argues that the life care agreement with its promise of burial is invalid because it could not be performed within the lifetime of Kacee. However, the statute of frauds, in this regard (Civ. Code, § 1624, subd. 6), makes invalid an agreement which is not to be performed during the lifetime of the promisor, and in this case the promisor was Raissis, not Kacee, who had done all he had agreed to do, and who was the promisee.

Appellant's claim that Kacee was prejudiced by what appellant calls the refusal of the trial court to permit plaintiff to call respondent as an adverse witness, before plaintiff had to testify, is without merit. Actually, counsel for plaintiff yielded readily when the court, in response to plaintiff's calling of the adverse party as his first witness, after presenting the receipt, and in response to respondent's objections, made a ruling in mild terms that the order of proof was in the discretion of the court and that the court thought plaintiff should proceed, at least with plaintiff's testimony. Appellant's counsel states that he wished to cross-examine respondent before producing a witness from the title company, but when he had completed plaintiff's testimony, he did not inform the court of his plan, and did not renew his call of respondent. We find no prejudice, in any event.

Finally, appellant argues that the life care contract is illegal as violative of sections 2350 and 2359 of the Welfare and Institutions Code, the first of which requires any organization or person receiving transfers of property from an aged person to furnish life care or care for a period of more than one year to have a license or permit and a certificate of authority from the State Department of Social Welfare, and the second makes the entering of such a contract without a certificate of authority a misdemeanor. This point was not raised in the trial court, nor was it contained in appellant's original brief before us, but is contained in a supplemental brief filed by the court's permission. It is appellant's conten-

tion that illegality may be raised for the first time even on appeal (*Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 148 [308 P.2d 713]), and that the court now should declare the life care contract invalid.

Assuming, however, that the contract is illegal because there was no showing that defendant had a license, permit or certificate of authority from the State Department of Social Welfare, we do not find that judgment for defendant should be set aside. Plaintiff brought the action on an alleged loan. He did not bring his action to recover money paid under an allegedly void agreement, as in such cases as *McAllister* v. *Drapeau,* 14 Cal.2d 102 [92 P.2d 911, 125 A.L.R. 800], and *Brooks* v. *Brooks,* 48 Cal.App.2d 347 [119 P.2d 970], wherein the issue of illegality was before the trial court, nor was his a suit for rescission. The issue was whether or not there was an agreement to repay. Against any promise to repay, either express or implied, respondent denied (at least implicitly) such promise and described the transaction. She does not, in her answer, call upon the court to enforce the life care contract, and, indeed, judgment was rendered against her, from which she does not appeal, on her counterclaim or crosscomplaint.

Thus, the case differs from the cases cited by appellant in which enforcement by the court of an illegal contract was sought and refused, namely, *Severance* v. *Knight-Counihan,* 29 Cal.2d 561 [147 P.2d 4, 172 A.L.R. 1107] ; *Wread* v. *Coffey-Murray, Inc.,* 42 Cal.App.2d 783 [110 P.2d 123] ; *Stockton Morris Plan Co.* v. *California Tractor etc. Corp.,* 112 Cal.App. 2d 684 [247 P.2d 90] ; or in which the enforcement was precluded although the issue of illegality was not advanced in the lower court, *Morey* v. *Paladini,* 187 Cal. 727 [203 P. 760] (plaintiff seeking damages for breach of contract in restraint of trade).

The contract between the parties to the case before us was one in which defendant had changed her position by purchasing the home, by obligating herself for the balance of the purchase price, by having repairs made on it, and by taking care of plaintiff while he remained. She did not remove plaintiff from the home, nor make conditions uncomfortable for him, nor did she, so far as the evidence shows, in any way make it impossible or difficult for the carrying out of the bargain. She had asked plaintiff, before the agreement was made, solicitously if he was sure he would not change his mind and demand his money back, and he had replied that he

was a Christian man and would not do so. All of these factors, and perhaps others, would have been weighed by the trial court, together with its construction of the statute, had the subject of illegality been raised. In the case of *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, the Supreme Court, although holding that no recovery could be had because the statute expressly forbade recovery to unlicensed contractors, said, at page 151: "In each such case [referring even to cases where enforcement is sought, rather than defense as in the case before us], how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. (See *Wilson* v. *Stearns,* 123 Cal.App.2d 472, 481-482 [267 P.2d 59] ; *John E. Rosasco Creameries, Inc.* v. *Cohen,* 276 N.Y. 274, 278-280 [11 N.E.2d 908, 118 A.L.R. 641] ; 6 Corbin, Contracts, 964-967 (1951) ; 2 Pomeroy, Equity Jurisprudence 137 (5th ed. 1951) ; Grodecki, *In Pari Delicto Potior Est Conditio Defendentis,* 71 L.Q.Rev. 254, 268.)"

Had illegality been an issue in the trial court, many elements would have been considered and balanced. In affirming the judgment, we sustain it on the case as presented to the judge, and we need not, in doing so, give support to any illegal transaction.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.