[Civ. No. 27368. Second Dist., Div. Two. April 27, 1964.]

CAROL DIETRICH, Plaintiff and Respondent, v. NOAH DIETRICH, Defendant and Appellant.

Crowley, Ruderman & Goffin and Arthur J. Crowley for Defendant and Appellant.

Belcher, Henzie & Biegenzahn and George M. Henzie for Plaintiff and Respondent.

HERNDON, Acting P. J.—Defendant Noah Dietrich appeals from the judgment awarding respondent, his ex-wife, the sum of $57,622.33 and declaring the rights of the parties in the application of one of the provisions of their property settlement agreement. The parties were married on May 23, 1936, and divorced on August 22, 1955. Throughout their marriage, and prior thereto, appellant had been employed by Howard Hughes and the Hughes Tool Company. In connection with their divorce proceedings, the parties entered into a property settlement agreement, which included, for the reasons set forth therein, the following paragraph:

"19A. Should Husband receive or obtain from Howard Hughes, Hughes Tool Company, or any company in which Howard Hughes owns a substantial interest, any bonus (other than the salary and profit participation in effect during the past fifteen (15) years or more of Husband's employment with Hughes Tool Company) or have any transaction with Howard Hughes or any such company by which Husband realizes an economic benefit not consistent with his capital investment or a capital gain, Wife shall be entitled to participate therein to the extent of one-third (1/3) thereof. Wife's participation therein shall be by way of a further division of community property. It is the purpose and intent that the provisions of this paragraph shall apply to any economic benefit received by Husband from Howard Hughes, or any such company, regardless of the form which said transaction may take and which benefit is not consistent with Husband's capital investment, or is in addition to the customary salary and bonus presently being received by Husband. The provisions of this paragraph are an outgrowth of an understanding had by Husband with Howard Hughes that, if it is possible and practical, as a result of the long service by Husband for the Hughes Tool Company, Husband will re-

ceive substantial economic benefit or compensation at some time in the future. It is clearly recognized and understood, however, that there is no definite understanding or agreement with Howard Hughes or the Hughes Tool Company, or any other company which Howard Hughes may own, or in which he may own a substantial interest, to so compensate Husband. The participation by Wife in said unusual bonus or capital gains to the extent herein provided is conditioned, however, upon the fact that said participation must be recognized by any governmental taxing authority as a payment to Wife of her community interest in said bonus, or as payment of alimony. If any taxes are assessed as a result of this provision, Wife agrees to pay said taxes immediately upon notification by Husband, and to hold Husband harmless in regard thereto.''

Following a nonjury trial, the court made appropriate findings of fact and conclusions of law determining that certain monies received, and to be received, by appellant Noah Dietrich from Howard Hughes and the Hughes Tool Company fell within the terms of this paragraph and entered judgment accordingly.

Appellant's brief makes no specific assignment of error, and, in effect, reargues, as if upon a trial de novo, the same theories and the same contentions respecting the facts which the trial court rejected. The brief makes no pretense of setting forth or summarizing all the material evidence bearing upon the essential issues, and, for this reason alone, it properly could be held that appellant is foreclosed from questioning the sufficiency of the evidence to support the findings. (*Bongiovanni* v. *Rackow*, 212 Cal.App.2d 550, 551-552 [28 Cal.Rptr. 155]; *Davis* v. *Lucas*, 180 Cal.App.2d 407, 409-410 [4 Cal.Rptr. 479].)

Viewing the evidence in the light most favorable to respondent, the record discloses that during the many years of appellant's marriage and of his employment by Hughes or the Hughes companies, Mr. Hughes had told appellant that he could expect in the future to receive some substantial economic benefit or compensation in addition to his regular salary and profit participation. It was to provide for the realization of this expectation that paragraph 19A was drafted and its terms made sufficiently comprehensive to include ''any transaction'' or ''any economic benefit received ... regardless of the form which said transaction may take'' so long as it was in addition to appellant's customary salary and income.

At Mr. Hughes' suggestion, appellant from time to time had submitted various plans designed to effect capital gains arrangements for himself and for certain other key employees which would not unduly dilute Mr. Hughes' ownership of the company. None of these plans had been accepted at the time the property settlement agreement was executed and, therefore, its provisions were drafted in the most comprehensive fashion consistent with the expressed intent of the parties.

Appellant testified that on September 15, 1956, he finally told Mr. Hughes that he was going to terminate his employment; that he felt it was obvious that Mr. Hughes was not "going to make any sincere effort to work out a capital gains arrangement for me, and if I continue on it will have to be on some other basis''; that they then proceeded to work out a contract providing that appellant would continue in his employment and would receive $1,000,000 whenever he did resign. Appellant, however, asserted that this oral agreement did not require any particular period of further employment, Mr. Hughes stating that "he would leave it to my judgment.''

Appellant was satisfied with this arrangement, but continued his employment only until May 12, 1957. During this period, he received his regular compensation and submitted no further plans regarding additional compensation. Mr. Hughes resented appellant's leaving, and bitterness developed between them. Appellant testified that he and Mr. Hughes had not spoken since May 12, 1957, when he resigned.

Shortly after terminating his employment, appellant demanded the $1,000,000 allegedly due him under the oral agreement; this demand was rejected. Initially, appellant consulted respondent's attorney regarding the possibility of his representing appellant in an action against Mr. Hughes because his client, respondent, would have an interest therein under paragraph 19A of the property settlement agreement. Respondent's attorney declined to accept the employment. Appellant thereafter retained other counsel and filed suit against Mr. Hughes and the Hughes Tool Company seeking to recover the $1,000,000 allegedly due plus certain lesser items.

This suit was settled by the terms of two agreements entered into between appellant and the respective defendants on August 1, 1959. The agreement with the Hughes Tool

Company was partly in the form of a "consultation" agreement. Under its terms, appellant was to receive $694,000, payable $100,000 on or before August 10, 1959, and $31,260 on February 20th of each year thereafter for 18 years. The agreement provided further that these payments "are not to cease for *any reason whatsoever*, and they shall be paid regardless of whether [appellant] dies or is unable to perform any services for the Company for *any reason whatsoever*, or whether the Company shall ever avail itself of such services. In the event of [appellant's] death, said payments shall be paid to [appellant's] estate, unless [appellant], his assignee or representative, otherwise directs by appropriate notice to the company." (Italics added.)

The "consultation services" to be supplied by appellant were to be for a maximum of 200 hours for seven years. The tax advantages inherent in arranging the settlement in this fashion are obvious. Appellant testified that, although he had received the required payments when due, he had yet to speak to Mr. Hughes, and while he had engaged in conversations with executives of the Hughes Tool Company who were his old friends, he could not "now and couldn't then distinguish between formal business conferences and conferences and conversations between friends." He had kept no written records of any sort, although he was required to be available for "consultations" only an average of less than four hours a week.

The settlement agreement with Mr. Hughes referred to the agreement with the company and provided, in part, that when appellant had received the initial $100,000 payment provided for therein, he would cause the action then pending against Mr. Hughes and the company to be dismissed. This second agreement also provided, *inter alia*, that Hughes would procure for, or make an unsecured $240,000 loan to, appellant within 30 days, to be repaid at the rate of $31,260 per year, principal and interest. The remarkable tax advantages to be obtained from the combination of the "loan" and the extended 18-year "consultation" payments are too apparent to require comment. If successful they might well produce greater net compensation to appellant than any "capital gain" plan that could have been conceived.

Respondent made demand for her one-third share in the sums thus received and to be received under these agreements in accordance with the terms of paragraph 19A of the property settlement agreement. This demand was rejected and

the present suit was instituted. It appears almost indisputable that these transactions were of the type contemplated by the property settlement agreement, and certainly it cannot be seriously contended that there is insufficient evidence to support the findings of the court to that effect.

As indicated, however, appellant does not actually dispute the sufficiency of the evidence. Rather, he appears to assert in a vague fashion that, as a matter of law, the court was bound to accept at face value the *form* of the agreements entered into with Hughes and the Hughes Tool Company. This contention is made, notwithstanding the obvious fact that respondent was not a party to these agreements, and the drafters of paragraph 19A of the property settlement agreement fortunately had been endowed with sufficient foresight to provide that its terms were to be applicable "to any economic benefit ... regardless of the form which said transaction may take...."

Appellant argues that the trial court was bound to regard the initial alleged promise of Mr. Hughes to pay appellant $1,000,000 whenever he chose to retire as being ordinary compensation for services to be rendered in the future. From this, the argument continues, the trial court was bound to find that the sum of $694,000 to be paid appellant under the terms of his agreements with Hughes and the Hughes Tool Company constituted ordinary salary representing the value to the company of his availability as a consultant.

This incredible assertion is made in the face of the fact that the payments therein provided for "are not to cease for any reason whatsoever," including immediate death. In addition, appellant's relations with Mr. Hughes were so strained that not only had they not spoken after appellant terminated his employment, but his agreement with Mr. Hughes required him to acknowledge and "expressly covenant" that he would not, "directly or indirectly, voluntarily or negligently, ... cause or permit the disclosure to others of: ... [a]ny fact or claim implying as to [appellant] either any authority to act in behalf of Hughes Tool Company or Howard Hughes or *a continuing relationship of trust and confidence with them*; ..." (Italics added.)

In support of his argument, appellant cites cases dealing with the accepted rule that as *between parties* who have reduced their agreements to writing, the courts may not rewrite such agreements contrary to the intention of the parties expressed therein, nor accept parol evidence in explana-

tion thereof, in the absence of fraud, mistake, duress, and so forth. Such rules, however, are not applicable where the action is one involving a stranger to the agreement.

" 'Strangers are at liberty to show that the written instrument does not disclose the full or true character of the relation between the contracting parties.' [Citations.] " (*Katz v. People's Finance etc. Co.*, 101 Cal.App. 552, 558 [281 P. 1097]; also see *Marx v. McKinney*, 23 Cal.2d 439, 442 [144 P.2d 353]; *Pierce v. Nash*, 126 Cal.App.2d 606, 623 [272 P.2d 938]; *Kassianov v. Raissis*, 200 Cal.App.2d 573, 575 [19 Cal. Rptr. 614].)

In addition, the trial court in the instant case was not required to determine the legal effect of the agreements between appellant and Hughes and the Hughes Tool Company, *inter se.* Its determination was restricted to the terms of paragraph 19A of the property settlement agreement executed by appellant and respondent. The judgment herein merely determines that the economic benefits received, and to be received, by appellant are of such variety as to entitle respondent to share therein. It is in no way determinative of the nature or effect of the agreements between appellant and others in any disputes that may arise in the future between them or any governmental taxing authorities. Neither does it "rewrite" such agreements or measure the various considerations existing in support thereof. Since the evidence was properly received and abundantly supports the findings made, the judgment is immune from the attack herein made upon it.

The judgment is affirmed.

Roth, J., and Kincaid, J. pro tem.,* concurred.

Appellant's petition for a rehearing was denied May 25, 1964, and the following opinion was then rendered:

THE COURT.—Upon petition for rehearing, appellant argues, *inter alia*, the contention that if the $694,000 which he is to receive under his agreement with the Hughes Tool Company is not to be regarded as ordinary income for future services (as he has maintained throughout this proceeding), then some unspecified portion of it must be attributable to the various minor items he had included in the complaint he

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

had filed in his action against Hughes and the Hughes Tool Company in addition to his principal demand therein for $1,000,000.

While a passing reference to this matter was made in appellant's opening brief under the titles "Statement of the Case" and "Statement of Facts," the brief contained no further discussion or argument concerning the subject. It was raised for the first time as a point on appeal in appellant's closing brief. In accordance with the familiar rule, the point was disregarded by this court in its initial opinion. (*Bank of America* v. *Frost,* 205 Cal.App.2d 614, 619 [23 Cal. Rptr. 441], and cases cited.)

Appellant neither urged the trial court to attempt such a segregation of considerations nor introduced any evidence thereon. In his answer to respondent's complaint, appellant took the following position, which he maintained throughout the trial and upon this appeal, until the filing of his reply brief:

"Defendant further alleges that the proceeds in which plaintiff seeks to participate *are for services by the defendant on and after August, 1959,* as the result of a contract entered into on or about that date, none of the provisions of which contract was contemplated by either of the parties hereto, nor by the parties to the said contract at the time of the Property Settlement Agreement of June 1, 1954." (Italics added.)

If, in truth and in fact, and contrary to appellant's contentions throughout, the agreement with the Hughes Tool Company was in part a settlement of a claim against the defendants asserted in his prior action and in which his wife was entitled to share, and in part a settlement of lesser claims in which she was not entitled to share, appellant wholly failed to show what, if any, consideration was given to the proportionate value of these latter items. The trial court, however, in its attempt to insure complete fairness to appellant, did consider this possibility, and its findings indicate that such consideration formed the basis of its decision to deny respondent the attorneys' fees to which she otherwise would have been entitled under the terms of the property settlement agreement. Under the circumstances created by appellant's own determination to defend this action in the manner which he himself adopted, such resolution by the trial court was abundantly fair to appellant and effected a benefit to him that was in nowise prejudicial.

All other arguments made by appellant in his petition for rehearing are repetitive of those heretofore made, and each of them has been fully considered by this court in reaching its original decision herein.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1964.