[Civ. No. 8198.   Fourth Dist., Div. One.   Feb. 17, 1967.]

GERTRUDE NICHOLS, Plaintiff and Respondent, v. ARTHUR MURRAY, INC., Defendant and Appellant.

Gibson, Dunn & Crutcher, John J. Hanson and John H. Sharer for Defendant and Appellant.

Rudnick & Wolfe, Jerome L. Fels, Harry L. Rudnick and Lewis G. Rudnick as Amici Curiae on behalf of Defendant and Appellant.

John W. Porter for Plaintiff and Respondent.

COUGHLIN, J. — Defendant appeals from a judgment awarding plaintiff the amount prepaid by the latter under contracts for dancing lessons which were not furnished.

Plaintiff had entered into five such contracts with "Arthur

Murray School of Dancing" at San Diego, operated by Burkin, Inc., a corporation, under a franchise agreement with defendant Arthur Murray, Inc., a corporation.

Defendant Arthur Murray, Inc., was engaged in the business of licensing persons to operate dancing studios using its registered trade name "ARTHUR MURRAY" and the Arthur Murray method of dancing.

The franchise agreement between defendant, therein referred to as Licensor, and Burkin, Inc., therein referred to as Licensee,[1] conferred upon the latter a license "to use the 'ARTHUR MURRAY METHOD' and name in connection with a dancing school" to be conducted by it in San Diego.

The judgment herein is premised upon the conclusion defendant was the undisclosed principal in the transaction between plaintiff and the "Arthur Murray School of Dancing" in San Diego. An undisclosed principal is liable for the contractual obligations incurred by his agent in the course of the agency (Shamlian v. Wells, 197 Cal. 716, 721 [242 P. 483]; Geary Street etc. R. R. Co. v. Rolph, 189 Cal. 59, 64 [207 P. 539]; Luce v. Sutton, 115 Cal.App.2d 428, 433 [252 P.2d 352]), even though the obligee did not know there was a principal at the time the obligations were incurred. (Hulsman v. Ireland, 205 Cal. 345, 352 [270 P. 948]; Luce v. Sutton, supra, 115 Cal.App.2d 428, 433.)

The issue on appeal is whether the evidence supports the conclusion, as found by the trial court, that Burkin, Inc., was the agent of defendant when the former executed the contracts for dancing lessons with plaintiff, and accepted the latter's prepayments on account of those contracts. Defendant contends Burkin, Inc. was only its licensee, and not its agent.

Whether the relationship between parties to a written agreement is that of principal and agent, at least insofar as this relationship affects a stranger to the agreement as in the case at bench, is dependent upon the intention of the parties determined from the writing and the accompanying circumstances. (Universal Sales Corp. v. California etc. Mfg. Co., 20 Cal.2d 751, 765 [128 P.2d 665]; Cook v. La Vina Land Co., 3 Cal.App.2d 21, 28 [39 P.2d 458].) Proof on the issue by a stranger is not restricted by the parol evidence rule. (Dietrich

---

[1]The franchise agreement under which Burkin, Inc. operated had been executed by two individuals, who were the principal stockholders in that corporation, and assigned to and assumed by it, with consent of defendant, two days after its execution.

v. *Dietrich,* 226 Cal.App.2d 650, 655-656 [38 Cal.Rptr. 261, 712]; see also *Marx* v. *McKinney,* 23 Cal.2d 439, 442 [144 P.2d 353]; *Burlingham* v. *Gray,* 22 Cal.2d 87, 93 [137 P.2d 9]; *Kassianov* v. *Raissis,* 200 Cal.App.2d 573, 575 [19 Cal.Rptr. 614].) The declarations of the parties in the agreement respecting the nature of the relationship created thereby are not controlling. (*Pacific Lbr. Co.* v. *Industrial Acc. Com.,* 22 Cal.2d 410, 413, 420 [139 P.2d 892]; *Lewis* v. *Constitution Life Co.,* 96 Cal.App.2d 191, 193-194 [215 P.2d 55]; *Cook* v. *La Vina Land Co., supra,* 3 Cal.App.2d 21, 28; 1 Witkin, Summary of Cal. Law (1960) p. 386, and cases cited; cf. *Title Insurance & Trust Co.* v. *Grider,* 152 Cal. 746, 752 [94 P. 601, 13 L.R.A. N.S. 866]; *Anderson* v. *Badger,* 84 Cal.App.2d 736, 742 [191 P.2d 768].) As with contracts generally, the writing should be considered as a whole. (*Anderson* v. *Badger, supra,* 84 Cal.App.2d 736, 742.)

In determining whether an agency relationship exists between parties to a business enterprise, which is the subject of an agreement between them, the right to control is an important factor. (*City of Los Angeles* v. *Vaughn,* 55 Cal.2d 198, 201 [10 Cal.Rptr. 457, 358 P.2d 913]; *Malloy* v. *Fong,* 37 Cal.2d 356, 370 [232 P.2d 241]; *Burlingham* v. *Gray, supra,* 22 Cal.2d 87, 94, 99-100; *Robinson* v. *George,* 16 Cal.2d 238, 243-244 [105 P.2d 914]; *Anderson* v. *Badger, supra,* 84 Cal.App.2d 736, 741.) If, in practical effect, one of the parties has the right to exercise complete control over the operation by the other an agency relationship exists; the former is the principal and the latter the agent. (*Pacific Lbr. Co.* v. *Industrial Acc. Com., supra,* 22 Cal.2d 410, 415; *City of Los Angeles* v. *Vaughn, supra,* 55 Cal.2d 198, 201.)

In the case at bench defendant depreciates the importance of the element of control, contending in a franchise agreement conferring the right to use a trade name controls are essential to the protection of the trade name; the controls provided by the instant agreement were for this purpose; the franchise holder was given some freedom of action; and, for these reasons, the court should have concluded the controls in question did not establish an agency relationship. To support this position defendant called the author of the agreement as a witness who testified, in substance, that the purpose of the control factors therein was to protect defendant's trade name.

In apparent response to this position, the trial court found: ". . . the controls and rights to control retained by Arthur

Murray, Inc. extended beyond those necessary to protect and maintain its trade mark, trade name and good will, and covered day to day details of the San Diego studio's operation.''

■ The issue of agency in this case was one of fact. (Gen. see *Seneris* v. *Haas,* 45 Cal.2d 811, 831 [291 P.2d 915, 53 A.L.R.2d 124]; *Bergtholdt* v. *Porter Bros. Co.,* 114 Cal. 681, 688 [46 P. 738].) The potential and practical effect of the controls provided by the franchise agreement upon the right of defendant to control the overall operation of the contemplated enterprise, and the purpose of the parties in providing these controls were questions of fact incident to the primary issue whether the right to control thus conferred created an agency relationship between the parties. ■ The implied finding of the court that the effect of these controls and the purpose of the parties in adopting them was to confer upon defendant that right of control demonstrating the creation of an agency relationship, is supported by inferences the court was entitled to draw from the evidence. It must be assumed the court drew those inferences that support its conclusion and rejected those that support a contrary conclusion. (*Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602 [86 P.2d 829]; *Greco* v. *Oregon Mut. Fire Ins. Co.,* 191 Cal.App.2d 674, 681 [12 Cal.Rptr. 802].)[2]

The trial judge orally expressed his belief respecting the effect of the agreement in this language: ''A reading of the contract here involved leads me to conclude that rigid effective controls over almost every aspect of the operation were retained by the licensor to the extent that for all intents and purposes it should be regarded as the operator of the business. The [licensor], if it so desires, can operate its own studios in this state, but if in effect it seeks through licensing agreements which give it almost complete control to do the same thing, it should have the same liabilities.''

---

[2] The decision in *Shaw* v. *Jeppson,* 121 Utah 155 [239 P.2d 745, 746], cited by defendant in support of its position the subject agreement does not create an agency, held that Arthur Murray, Inc. was not doing business in the State of Utah because the operator of the Arthur Murray Studio in that state was not an agent of Arthur Murray, Inc. This holding was predicated upon a trial court finding that the studio operator, who was the named licensee in an agreement similar to that in the case at bench, was not the agent of Arthur Murray, Inc., and the conclusion on appeal that the evidence supported this finding. Whether the evidence would have supported a contrary finding premised on inferences properly deducible therefrom, was not discussed. As a consequence, the effect of the decision in the cited case as authority in support of defendant's position is of little weight.

■ The subject agreement, in substance, conferred upon defendant the right to control the employment of all employees of the franchise holder whether or not their duties related to teaching or supervising dancing instruction; to fix the minimum tuition rates to be charged; to select the financial institution handling, financing or discounting all pupil installment contracts; to designate the location of the studio, its layout and decoration; to make refunds to pupils and charge the amounts paid to the franchise holder; to settle and pay all claims against defendant arising out of the operation of the contemplated enterprise; to reimburse itself for the payment of any such refunds or claims, and the expense of any litigation in connection therewith, from a fund consisting of weekly payments by the franchise holder to defendant in an amount equal to 5 percent of the gross receipts; to invest the proceeds of this fund and pay the franchise holder only such portion of the income therefrom as defendant "shall determine should be properly allocated"; to control all advertising by the franchise holder, which was required to be submitted to defendant for approval prior to use; and to exercise a broad control over the operation of the enterprise under a provision requiring the franchise holder "to conduct the studio, to be maintained and managed by Licensee, in accordance with the general policies of the Licensor as established from time to time," and directing that failure to maintain such policies shall be sufficient cause for immediate cancellation of the agreement.

Other provisions evidencing the nature of the control vested in defendant were those requiring the franchise holder to honor unused lessons purchased by a pupil from another franchise holder at the rate of $2.50 per hour, and to pay that amount for unused lessons purchased from the former when furnished by the latter; also requiring the franchise holder to maintain records, and submit copies thereof weekly to defendant, setting forth the names and addresses of pupils enrolled during the week, the amounts paid by all pupils, number of lessons taken by each pupil, and the names of all pupils taking lessons; and further requiring the franchise holder to furnish defendant with duplicates of all social security and unemployment insurance reports, and all federal and state tax returns.

Many of the controls conferred were not related anywise to the protection of defendant's trade name, including its dancing and teaching methods, good will and business image.

Other controls, although related to the protection of the trade name, because the exercise thereof was not limited to effecting such purpose, enabled defendant to impose its will upon the franchise holder in areas wholly unrelated to that purpose.[3]

Defendant directs attention to provisions in the agreement which it claims expressly declare the intention of the parties that no agency relationship is intended;[4] refers to the established principle that agency is a consensual relationship; and contends these circumstances dictate the conclusion no agency was created by the subject agreement. This contention disregards the fact that the agreement, as such, was consensual; both parties consented to the provisions imposing controls; and the agency relationship was created by the legal effect of those provisions.

Defendant also emphasizes the importance of the franchise method of business to the economy; claims the decision of the trial court will destroy this type of business; deplores the plight of the independent small businessman who can operate only through franchise agreements; and urges a review of the interpretation placed upon the subject agreement in light of this situation. Our conclusion is that the controls imposed

[3]The need for and scope of controls over the use of a trade name, in a franchise agreement authorizing such use, to maintain, prevent abandonment of, and protect the owner's exclusive right to the trade name are set forth in cases cited by both parties, viz., *Denison Mattress Factory* v. *Spring-Air Co.*, 308 F.2d 403, 409, *Dawn Donut Co.* v. *Hart's Food Stores, Inc.*, 267 F.2d 358, 366-377, *E. I. Du Pont De Nemours & Co.* v. *Celanese Corp.*, 35 C.C.P.A. Patents 1061 [167 F.2d 484, 487-490, 3 A.L.R.2d 1213], and *Morse-Starrett Products Co.* v. *Steccone*, 86 F. Supp. 796, 805. In *Arthur Murray, Inc.* v. *Horst*, 110 F.Supp. 678, the court held a provision in an Arthur Murray, Inc. franchise agreement that it would not interfere directly or indirectly with the internal management of the studio operator's business did not effect such a loss of control over the trade name as to constitute an abandonment. The franchise agrement at bench does not contain a similar provision. To the contrary, it contained many provisions conferring upon defendant the right to control the internal management of Burkin, Inc.

[4]There are two such provisions. One of them requires the licensee to post in the reception room of the studio a license certificate in the form prescribed by the licensor. The prescribed certificate states in part that the licensee is solely responsible for all obligations of any kind respecting the business of the studio. The other provision declares an understanding between the parties that the license does not authorize the licensee to sign the name ''Arthur Murray'' to any instrument in writing or ''hold himself out'' as agent for the licensor, i.e., Arthur Murray, Inc., and that all contracts shall be in the name of the licensee and not in the name of ''Arthur Murray.'' Neither of these provisions expressly declare the relationship of principal and agent does not exist between the licensee and licensor. They bear the interpretation and support an inference that the licensee is foreclosed from disclosing the existence of an agency relationship between the parties.

upon the franchise holder by defendant completely deprived the former of any independence in the business operation subject to the agreement.

The agreement provided, in substance, that Burkin, Inc. "shall solely be responsible" for all obligations incurred in the studio operation, and defendant "shall not be liable" for any thereof. Defendant asserts as a fact that by virtue of this provision it is not responsible for any obligation incurred by Burkin, Inc., and concludes this establishes the nonexistence of an agency relationship between them. However, the provision effected such nonresponsibility only as between the parties to the agreement. Furthermore, the existence of the provision imposing upon Burkin, Inc., and relieving defendant of the responsibility for obligations incurred, did not require a finding defendant had no control over incurring those obligations. To the contrary, there are many provisions in the agreement vesting in defendant the right to control a substantial part of the obligations incurred in the operation of the business through its right to require and assert the nature, extent and amount of most of the contemplated expenses incident to the operation.

Under the policy control provision of the subject agreement, defendant could have foreclosed the practice of executing multiple contracts, such as in the case at bench, and obtaining prepayments on account of lessons provided thereby far in advance of the time when those lessons would be given. Defendant received its share of the payments made by plaintiff upon such contracts under the provisions of the franchise agreement directing the weekly payment to it of 10 percent of the franchise holder's gross receipts, and an additional 5 percent thereof for the "fund" from which it was authorized to reimburse pupils for prepaid unused lessons.

The evidence adequately supports the conclusion that in executing the subject contract and receiving the prepayments thereon, Burkin, Inc., was acting as agent for defendant.

The judgment is affirmed.

Brown (Gerald), P. J., and Finley, J. pro tem.,* concurred.

A petition for a rehearing was denied March 6, 1967, and appellant's petition for a hearing by the Supreme Court was denied April 12, 1967.

_____

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.